Lyndon L. DALY, Plaintiff-Appellant,

v.

Mervil L. MOORE et al., etc.,
Defendants-Appellees.

No. 73-1852.

United States Court of Appeals, ·
Fifth Circuit.

March 15, 1974.

Rehearing and Rehearing En Banc
Denied May 14, 1974.

---

Phillip D. Hardberger, San Antonio, Tex., Jim Bushala, Jr., Corpus Christi, Tex., James R. (Ron) Weddington, Austin, Tex., for plaintiff-appellant.

Tom N. Goodwin, Nat B. King, Laredo, Tex., Canales & Garza, Corpus Christi, Tex., Lawrence A. Mann, Laredo, Tex., for defendants-appellees.

Before TUTTLE, DYER and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This is an action for compensatory and punitive damages brought by Lyndon L. Daly, a tenured college professor, against the trustees and president of Laredo Junior College. Plaintiff originally alleged three causes of action: (1) that he had been fired for reasons infringing upon his right to free speech and association; (2) that the decision to terminate his employment was wholly arbitrary and capricious, and (3) that he was denied his procedural rights as set forth in the college's rules concerning faculty dismissal and was, therefore, denied due process of law.

Trial was had before a jury and that jury found by way of interrogatories that the defendants had in no way violated the plaintiff's First Amendment rights. The jury did, however, find that defendants, in firing the plaintiff, acted maliciously and awarded $8,000.00 punitive damages. In light of the jury's negative answer concerning violation of the plaintiff's First Amendment rights, the judge rendered judgment that plaintiff take nothing. Plaintiff appeals.

### Factual History

Laredo Junior College is a community college in Laredo, Texas, financed by local property taxes and state funds. Its governing body is the Board of Trustees and its president is Dr. Laird, all of whom were named as defendants. The plaintiff, Lyndon L. Daly, was hired to teach at the college in 1965, and taught there until the end of the summer session in 1969. There is no question that the plaintiff held a tenured position.

While teaching at Laredo Junior College, plaintiff was an active member of the American Association of University Professors Chapter and the Faculty Senate of the Laredo Junior College. Plaintiff served as the first president of the AAUP Chapter and as vice-chairman of the Faculty Senate. These organizations were independent of the college administration and on some campuses are considered unfriendly to administrations. Plaintiff testified at trial that at no time did he receive any written or oral communication from the adminis-

tration that was in any way critical of his membership in or of his activities on behalf of these organizations. In the spring of 1968, after plaintiff had actively participated in the above mentioned organizations, he was granted tenure by the Board of Regents on the recommendation of the president of the college, Dr. Laird.

The record demonstrates that the college administration had a very favorable attitude toward the plaintiff. Dr. Laird appointed the plaintiff to be chairman of the Faculty Library Committee, which had the responsibility of completing a self-study of the library required by the Southern Association of Colleges and Universities. That report was to a certain extent critical of the library and recommended, among other things, that closer communication between the faculty and library be established. The report was adopted as part of the total study program of Laredo Junior College and the report's recommendations and suggestions were accepted and implemented.

During the school year 1968–69, the plaintiff was elected "Outstanding Male Teacher of the Year," and Dr. Laird remarked publicly that he wished he had several more teachers like Daly. There is no evidence of any conflict between the plaintiff and the administration.

Plaintiff's contract was to begin on September 1, 1969, and end May 31, 1970. Plaintiff taught two courses at the college during the summer of 1969. During the latter part of that summer, students began to inquire of the administration whether the plaintiff was going to return in the fall. The president of the college testified that the plaintiff in the past had been absent at least once due to illness, but had notified the administration and provided for substitution.[1] A portion of the plaintiff's contract specifically states that the teacher is to "notify the president as far in advance as possible his intention to interrupt or terminate his services at the institution."

During the period between August 25, 1969, and September 1, 1969, the president of the college attempted on numerous occasions to contact the plaintiff, both at his college office and at his home. The best description of what happened can be found in Dr. Laird's testimony. Under oath, Dr. Laird stated:

There was certain conversation on the campus to the effect that Mr. Daly wasn't coming back. Students were inquiring whether or not we had a replacement for him. They were convinced that he wasn't coming back, and they wanted to know if we had anybody to take his place. So this conversation eventually got to me, and I inquired about it, and, yes, there were students who wanted to know if we had somebody to take his place, and I thought I should try to find out about it, so I tried to call Mr. Daly at his campus telephone. I called him several times when I thought he should be there, and I did not get any answer from him. I wrote him a note, a handwritten note, and I put it in his mailbox at the campus. I also tried to call him at his home, and the operator cut in and wanted to know what number I was calling, and I told her, and she said that number had been disconnected. So I then wrote Mr. Daly a letter, I think it was on the 22nd day of August—I'm not positive about the date, but it was the last day of summer school, in which I said, "Please come in to see me. I need to

1. Dr. Laird testified, "I remember that on another occasion he had gone to the hospital for a checkup, and he had made proper provisions for a substitute, because he was going to be gone at a time when school was in session. I'm not certain when it was, but I think it was during exams, and he had a proper substitute for him. He notified us in advance that he was going. The dean had told me that he was going to go, that Mr. Daly was going to go for a checkup, and proper substitutions were arranged for him. I'm not positive, but I think his wife substituted for him. She substituted for him for about three days once, and I think that was the time, although I'm not positive."

talk with you", and I mailed that personally in the post office on the 22nd, and he should have gotten it the next day, the 23rd, certainly not later than the 24th. The letter that I sent to him originally—I mean, the letter that I sent later to him did get to him the following day when I mailed it in the post office, he got it the next day.

Dr. Laird received no response to any of his attempted communications. At no time between August 25 and September 1 did the plaintiff communicate with anyone at the college. On September 2, 1969, the first faculty meeting was called and the plaintiff was absent. Dr. Laird was concerned because the plaintiff was the only person qualified to teach certain courses being offered that term, and if the plaintiff was not to be present, certain provisions had to be made immediately. At this first meeting, Dr. Laird heard further rumors from other faculty members, both that the plaintiff was ill and that he was in Houston. Dr. Laird had no way of knowing whether these rumors were true. After consulting the college's attorney, Dr. Laird mailed the following registered letter on September 3, 1969, to the plaintiff's Laredo address:

Dear Mr. Daly:

This is to advise that inasmuch as you have failed to appear on September 1, 1969, and assume your duties with the Laredo Junior College as provided for in the contract executed by you and Laredo Junior College, and further in view of the fact that you have failed to contact any member of the staff of the junior college and give any valid reason for your failure to assume your duties as instructor with the college, I have no alternative but to declare your contract has been breached, and, therefore, of no further force and effect. If you have any personal effects at the college which you would like to pick up, you may do so at your earliest convenience. Other than that your relations with the junior college are fully and finally terminated hereby.

Very truly yours,

Ray A. Laird, President

Approximately two years later, plaintiff instituted this action against the college for $50,000.00 damages allegedly resulting from his contract termination. At no time prior to the filing of this suit did plaintiff request a hearing or communicate with the college administration. The jury's verdict in the district court by way of interrogatories was that none of the plaintiff's First Amendment rights had been violated. The jury then awarded $8,000.00 in punitive damages. The district court's judgment refused the punitive damages and plaintiff appeals. We affirm the district court.

The interrogatories given by the trial court to the jury consisted of four questions which dealt only with plaintiff's First Amendment claims. The court's interrogatories and the jury's answers thereto are as follows:

*Special Interrogatory No. I*

We, the Jury, find that the letter dated September 3, 1969, in evidence as Defendants' Exhibit No. 3, was not
(insert "was" or "was not")
sent to Plaintiff Daly, in whole or in part, because of his association with American Association of University Professors or the so-called Faculty Senate, or both.

If you have answered the foregoing Special Interrogatory No. I by inserting the word "was" in the blank space, then answer the following Special Interrogatory No. II.

*Special Interrogatory No. II*

Plaintiff suffered actual damages in the amount of $_____

*Special Interrogatory No. III*

We, the Jury, find that the Defendants, in terminating Plaintiff Daly's employment relationship,

Did
―――――――――――――
(insert "did" or "did not")
act maliciously or wantonly or oppressively.

If you have answered the foregoing Special Interrogatory No. III by inserting the word "did" in the blank space, then answer the following Special Interrogatory No. IV.

### Special Interrogatory No. IV

Plaintiff is entitled to punitive damages, as defined by the Court, in the amount of $8,000.00.

The trial court found the punitive damage award inconsistent with the jury's other findings. Plaintiff argues on appeal that because his due process rights under the Fourteenth Amendment were violated, the damage award should have been allowed.

The questions in this case are: 1) was the trial court correct in disallowing the jury award of punitive damages, and 2) should the trial court have given the jury more specific instructions or interrogatories concerning plaintiff's Fourteenth Amendment allegations?

### I

### Punitive Damages

As has been previously stated, the punitive damage award was disallowed by the trial court because it was not supported by the evidence or the answers to the other interrogatories. Upon review of the record and the jury's findings, we find that such action by the trial court was well within the discretion of that court and was not error. Jones v. Mayer, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968); Boehne v. Southwestern Bell Telephone Co., 10 F.Supp. 788 (W.D.Texas, 1935). See 22 Am.Jur. 2d Damages §§ 241, 242 (1965), Annot. 17 A.L.R.2d 530 § 2 (1951), Cf. Wills v. Trans World Airlines, Inc. (S.D.Cal. 1951), 200 F.Supp. 360.

### II

### Due Process of Law

During the trial, plaintiff requested certain jury instructions as to the due process requirements of the Fourteenth Amendment. The request was denied. Although not succinctly set out by the appellant, the question now before this court is whether the trial court erred in not submitting to the jury the requested instructions on the due process requirements of the Fourteenth Amendment.

### Jury Instructions—Purpose

The purpose of jury instructions is to advise the jury on the proper legal standards to be applied in determining issues of fact as to the case before them. Merchant's Fast Motor Lines, Inc. v. Lane (5 Cir. 1958), 259 F. 2d 336, cert. den., 359 U.S. 935, 79 S.Ct. 651, 3 L.Ed.2d 636. The plaintiff is entitled to special instructions on his theory of the case only if there is sufficient evidence to support such a theory and if a proper request is made. Grice et al. v. Ray McDermott and Co., Inc. (5 Cir. 1972), 465 F.2d 486, Bolden v. Kansas City So. Rwy. Co. (5 Cir. 1972), 468 F. 2d 580. A court should refuse a request for an instruction that correctly states a legal abstraction not applicable to the facts. Jackson v. So. Rwy. Co. (5 Cir. 1963), 317 F.2d 532, cert. den., 375 U.S. 837, 84 S.Ct. 77, 11 L.Ed.2d 65.

### Due Process in Laredo

Did the facts in the case before the district court require that the requested instruction on due process or a similar instruction be given?

A somewhat analogous fact situation to this case existed in Smith v. Board of Regents, State Senior Colleges (5 Cir. 1970), 426 F.2d 492. Smith submitted a letter of resignation to the president of his college and it was accepted. The next month, Smith wrote another letter to the president and referred to the letter of resignation as a "letter of resignation by intimidation," and requested a

conference. The Board of Regents then met to give Smith a hearing as he had requested, but when they realized that they had already accepted his resignation, they refused the hearing. Smith then filed a complaint against the college in which he alleged denial of due process and equal protection guarantees of the United States Constitution, and that his exclusion from employment was arbitrary and in retaliation for his exercise of his First Amendment guarantees of freedom of speech.

Smith was denied relief by the federal district court. This court affirmed the district court and held that although the rules and regulations of the college provided for hearing for any faculty member who requested such a hearing after being discharged, such was not the situation in Smith's case. This court noted that the rules and regulations of the college never came into play because of Smith's voluntary resignation. Smith then never reached the point where his due process rights were violated.

■ The facts of the case now before this court are even more compelling. The plaintiff appears to have wilfully terminated his contract by specifically avoiding and neglecting his duties and obligations at Laredo Junior College. He never requested a leave of absence prior to his departure. He notified none of the officials of the college of any of the alleged occurrences which caused him to be absent. During the period while he was in the hospital, he wrote approximately 150 letters, none of which attempted in any way to communicate his absence or the reasons for it to the college. He did, in fact, move his residence address in Laredo and had his telephone disconnected, all without notice to the college. The plaintiff constructively and practically severed all ties with the college for a period of almost two years. No hearing was even requested until after this action was started two years after his departure. The plaintiff contended at trial that he was deprived of his position because of his exercise of his right to free speech and now contends that whether that was true or not is of no consequence because his rights to due process of law were violated, and the district court erred in not so instructing the jury.

The facts before this court dictate only one conclusion. The plaintiff wilfully terminated his contract with Laredo Junior College and never reached the point at which hearing was required. There is no indication in the record of any desire of the college to dismiss the plaintiff for any reason other than his failure to honor his contract commitment to them. There are no facts to support the conclusion that an abridgement of the plaintiff's First Amendment rights took place, nor was there any evidence that required any consideration of plaintiff's due process rights to a greater extent than was done by the trial court.

After careful and thorough review of the case on appeal, we find that the district court must be

Affirmed.