**Harold E. HARRINGTON et al.,
Plaintiffs-Appellants,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

No. 74–1163.

United States Court of Appeals,
First Circuit.

Heard Sept. 4, 1974.
Decided Oct. 24, 1974.

James R. McGowan, Providence, R. I., with whom Lester H. Salter and Salter, McGowan, Arcaro & Swartz, Incorporated Providence, R. I., were on brief, for appellants.

Elmer J. Kelsey, Atty., Tax Div., Dept. of Justice, with whom Richard M. Roberts, Acting Atty. Gen., Washington, D. C., Lincoln C. Almond, U. S. Atty., Providence, R. I., Gilbert E. Andrews, and Alfred S. Lombardi, Attys., Tax Div., Dept. of Justice, Washington, D. C., were on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and CLARY,* District Judge.

CLARY, Senior District Judge.

This appeal has been taken by plaintiffs, Harold Harrington and Francis Davis, from the entry of judgment against them in favor of the United States and from the denial of their motion for a new trial. These two civil actions were consolidated and tried before The Honorable Edward W. Day and a six-person jury resulting in verdicts against the plaintiffs on their claims for refunds and in favor of the United States on its counterclaims. For the reasons set forth in this opinion, we affirm.

The relevant facts require some exposition. On November 4, 1966, the Commissioner of Internal Revenue made an assessment of $22,585.84 against both plaintiffs under authority of Section 6672 of the Internal Revenue Code of 1954. The assessments were based on plaintiffs' asserted liability for unpaid federal income and social security taxes withheld from employees and due and owing from D & H Building Wreckers, Inc. (hereinafter D & H) for the first and second quarters of 1963. On December 16, 1966, the Commissioner, again under Section 6672, assessed the amount of $21,311.63 against Davis. This assessment was based on Davis' asserted liability for unpaid federal income and social security taxes withheld from employees and due and owing from Sixth Wrecking, Inc. (hereinafter Sixth Wrecking) for the third and fourth quarters of 1963.

---

* Senior District Judge sitting by designation.

Davis subsequently paid $1,627.71 of the assessment against D & H and $103.59 of the amount attributable to Sixth Wrecking. Harrington paid $49.91 of the amount attributable to D & H. Both plaintiffs filed claims for refunds, and filed suit for the amounts paid when the claims were disallowed. The United States filed counterclaims totalling $31,723.05, plus interest, this amount representing the unpaid assessments; $10,515.01 attributable to D & H and $21,208.24 attributable to Sixth Wrecking.

D & H was a Rhode Island Corporation and had been in business since 1955. Davis was president, treasurer and 85% stockholder in the company. Harrington was vice-president, secretary and 15% stockholder. During the relevant time period, the first two quarters of 1963, the company was engaged in unrelated projects in Pittsburgh, Pennsylvania, and Providence, Rhode Island. It is only the Providence operation of D & H which is of concern here in this action.

Pursuant to a May 1962 contract, D & H was demolishing buildings for the Providence Redevelopment Agency. Payment under the contract was made following the submission of monthly requisitions by D & H for work completed. The Agency would pay the requisition, less 10% held back against completion of the entire contract. The requisition for work done in May 1963 was not paid since D & H's insurance on the job was cancelled. When satisfactory arrangements for reinsurance could not be made, the Agency terminated its contract with D & H.

Harrington alone supervised the D & H demolition operations in Providence, although Davis would usually fly back to Providence on weekends to discuss business matters with him. Both Davis and Harrington had authority to sign checks on behalf of D & H for the Providence operation, as did Davis' sister, Peg Paquette, who signed checks on behalf of Davis. The Employer's Quarterly Federal Tax Returns, Form 941, submitted by D & H were signed by Davis as president of the company.

D & H was petitioned into receivership in July of 1963, and tax liens which the Internal Revenue Service filed against D & H went unsatisfied. In answer to interrogatories, both Harrington and Davis stated that D & H had sufficient funds to pay the withholding and F.I.C.A. taxes, although they offered clarifications of these answers at trial. In any event, the taxes were not paid.

While Harrington was in Providence, Davis was supervising the demolition of the Rosenbaum Building in Pittsburgh pursuant to a contract with Tenny Realty Corporation. Due to unforeseen difficulties and labor problems, D & H fell behind in its demolition schedule. Because of financing pressures, Tenney and D & H entered into a new agreement whereby Tenney would pay all expenses of demolition using D & H's employees and equipment. To oversee the work, Tenney hired the consulting firm of Paul Channin Company of New York. Thereafter, Gilbert Cutler, a Channin employee, was present at the job site from Thursday afternoon until Friday evening each week. When D & H went into receivership in Rhode Island, work stopped immediately at the Pittsburgh site. A new corporation, Sixth Wrecking, was formed by Davis, Carmine Distante, a D & H supervisor, and Davis' father-in-law, George Piacitelli, apparently at the direction of Cutler and Tenney's attorneys. Davis served as president of the new company which continued the demolition work.

Checks used to pay employees and creditors of D & H, and later of Sixth Wrecking, were prepared by Joseph Stanionis, a bookkeeper, at the direction of Davis. Davis was the only one who signed the checks. Davis directed Stanionis as to the order in which creditors were to be paid, and Davis testified that while other creditors were paid he was aware that the taxes in question remained unpaid. On October 4, 1963, Tenney and Sixth Wrecking terminated their contract.

At the close of the taxpayers' case, the Government's motion for a directed verdict was denied. Davis moved for a directed verdict as to his liability for the Providence taxes at the close of all the evidence, and the Government renewed its earlier motion for a directed verdict. Both motions were denied and the jury returned verdicts against the plaintiffs and in favor of the Government.

Plaintiffs advance several contentions which they feel necessitates reversal as to one or both of them. We shall consider these contentions in order.

Initially, Davis argues that the trial court erred in denying his motion for a directed verdict as to his liability for the taxes arising from the D & H activities in Providence. Before addressing this point directly, we must consider the substantive law involved. Section 6672[1] provides that any person required to collect, account for and pay over the requisite taxes,[2] but who willfully fails to do so, shall be liable for a penalty equal to the amount of the taxes in default. As it applies to this case, "person" is defined to include a corporate officer or employee under a duty to collect, account for and pay over the taxes.[3] The tax money required to be collected or withheld constitutes a special fund in trust for the United States.[4] The penalty imposed by Section 6672 is civil in nature, United States v. Industrial Crane & Mfg. Co., 492 F.2d 772 (5th Cir. 1974), and designed to insure the protection of government revenue by assuring that taxes will be collected.

Spivak v. United States, 370 F.2d 612 (2nd Cir.), cert. denied, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625 (1967); Botta v. Scanlon, 314 F.2d 392 (2nd Cir. 1963).

The individual sought to be held liable under Section 6672 must be a "person" within the meaning of the statute, be required to collect, account for and pay over the taxes, and willfully fail to do so. United States v. Hill, 368 F.2d 617 (5th Cir. 1966). "Willful" has been defined as a voluntary, conscious and intentional decision to prefer other creditors to the United States, and the "bad motive" requirement of criminal statutes is not a necessary element. Burden v. United States, 486 F.2d 302 (10th Cir. 1973), cert. denied, 416 U.S. 904, 94 S.Ct. 1608, 40 L.Ed.2d 109 (1974); McCarty v. United States, 437 F.2d 961, 194 Ct.Cl. 42 (1971); Monday v. United States, 421 F.2d 1210 (7th Cir.), cert. denied, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970). Further, delegation will not relieve one of responsibility; liability attaches to all those under the duty set forth in the statute. Braden v. United States, 442 F.2d 342 (6th Cir.), cert. denied sub nom., Bonistall v. Braden, 404 U.S. 912, 92 S.Ct. 229, 30 L.Ed.2d 185 (1971).

It is proper to direct a verdict in a case where the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there is only one verdict reasonable men could reach. Fleming v. McEnany, 491 F.2d 1353 (2nd Cir. 1974). Whether the

---

1. Section 6672 provides in pertinent part: Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

2. The taxes at issue are those withheld by an employer for Social Security (F.I.C.A.)

and federal income tax pursuant to Sections 3102 and 3402. Int.Rev.Code of 1954, §§ 3102, 3402.

3. The term "person", as used in this subchapter, includes an officer or employer of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs. Int.Rev.Code of 1954, § 6671(b).

4. Int.Rev.Code of 1954, § 7501; Monday v. United States, 421 F.2d 1210 (7th Cir.), cert. denied, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970).

evidence is sufficient to create an issue of fact to go to the jury is solely a question of law to be determined by the court. United States ex rel. Weyerhauser Co. v. Bucon Constr. Co., 430 F.2d 420 (5th Cir. 1970); Roche v. New Hampshire Nat'l. Bank, 192 F.2d 203 (1st Cir. 1951). The same standard is to be applied by both the trial court and the reviewing appellate court; whether there is evidence upon which the jury could properly find a verdict for the party against whom the motion is directed. Ralston Purina Co. v. Edmunds, 241 F.2d 164 (4th Cir.), cert. denied, 353 U.S. 974, 77 S.Ct. 1059, 1 L.Ed.2d 1136 (1957). The court must view the evidence and any inferences which may reasonably be drawn from it in the light most favorable to the party opposing the motion for directed verdict. Riske v. Truck Ins. Exch., 490 F.2d 1079 (8th Cir. 1974); Welch v. Outboard Marine Corp., 481 F.2d 252 (5th Cir. 1973); Bayamon Thom McAn, Inc. v. Miranda, 409 F.2d 968 (1st Cir. 1969). If the evidence is of such quality and weight that reasonable men might reach different conclusions in the exercise of impartial judgment, a motion for directed verdict should be denied. Trawick v. Manhattan Life Ins. Co. of New York, N.Y., 447 F.2d 1293 (5th Cir. 1971), appeal after remand, 484 F.2d 535 (5th Cir. 1973).

■ Our task now is to apply the above mentioned legal principles to the facts of this case in order to determine if the evidence was sufficient to present a jury question. The record indicates that D & H had only two shareholders, Davis and Harrington. Davis was president and treasurer as well as 85% shareholder. While some question existed as to whether Davis personally signed any company checks in Providence during the first two quarters of 1963, it is clear that his sister was authorized to, and did sign company checks in his behalf. Further, Davis flew to Providence on weekends and conferred with Harrington about business matters, including finances. Davis signed the Employer's Quarterly Federal Tax Returns, Form 941, as president of D & H and also had a D & H bank account in Pittsburgh on which Harrington testified that he (Harrington) drew no checks. When the Internal Revenue Service filed liens against money due D & H and in the hands of the Redevelopment Agency, both Davis and Harrington attended a meeting with I.R.S. personnel. Both attempted to obtain loans from two banks in order to clear up D & H's financial difficulties. From such facts and the reasonable inferences which flow from them, the jury clearly could find that Davis was a responsible person within the meaning of the statute. The fact that Harrington testified to his sole responsibility for the Providence operation presented a question of credibility to be resolved by the trier of fact.

■■ Davis has contended that he could not be responsible for the Providence taxes since the record indicated that such responsibility had been "delegated" to Harrington. First, it must be recognized that the definition of the word "person" is not to be so limited as to only encompass those persons specifically enumerated. Pacific Nat'l. Ins. v. United States, 422 F.2d 26 (9th Cir.), cert. denied, 398 U.S. 937, 90 S.Ct. 1838, 26 L.Ed.2d 269, rehearing denied, 400 U.S. 883, 91 S.Ct. 116, 27 L.Ed.2d 121 (1970). The term "person" is to be construed to include all those connected with a corporation so as to be responsible for the performance of the act in respect of which the violation has occurred. Liability is not limited to those employees performing merely mechanical functions of collection and payment, United States v. Graham, 309 F.2d 210 (9th Cir. 1962), but extends to all with responsibility and authority to avoid the default which constitutes a violation of the statute; even though more than one person may be liable. Scott v. United States, 354 F.2d 292, 173 Ct.Cl. 650 (1965). In this regard we have no difficulty in concluding that the issue of Davis' responsibility properly went to the jury. The language of the Court of

Claims in a similar situation is enlightening:

As a general proposition it may be safely postulated that one who is the founder, chief stockholder, president, and member of the board of directors of a corporation . . . is rebuttably presumed to be the person responsible under section [6672] of the Code and is thus liable for the penalty, in the absence of an affirmative showing by him that in actual fact he lacked the ultimate authority to withhold and pay the employment taxes in question, or that his omission was not willful in the statutory sense. McCarty v. United States, 437 F.2d 961, 967–968, 194 Ct.Cl. 42 (1971).

Since the jury could properly have found that Davis was the person with responsibility for the taxes, we find no error in the decision of the court below.

■ The evidence is also ample to justify a jury finding that Davis willfully preferred other creditors to the United States, all that is required under the statute. Burden v. United States, 486 F.2d 302 (10th Cir. 1973), cert. denied, 416 U.S. 904, 94 S.Ct. 1608, 40 L.Ed.2d 109 (1974); McCarty v. United States, 437 F.2d 961 (Ct.Cl.1971); Monday v. United States, 421 F.2d 1210 (7th Cir.), cert. denied, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970). The evidence indicated that sufficient funds were available to pay the taxes, including $35,471.50 which D & H received from the Redevelopment Agency in the first two quarters of 1963. The unpaid D & H assessment amounted to $10,515.01.

Plaintiffs apparently would have us believe that the taxes would have been paid with sums due but not received from the Redevelopment Agency. This argument is unpersuasive, as the jury found. The evidence is sufficient to support a finding that D & H "risked" funds properly payable to the United States and were unable to cover themselves due to business reverses. *See* Newsome v. United States, 431 F.2d 742, 746 (5th Cir. 1970).

■

Having carefully considered all of the arguments raised, we conclude that the district court did not err in denying Davis' motion for directed verdict as to his liability for the Providence taxes of D & H.

Plaintiffs assert that various errors committed by the trial judge concerning the admissibility of evidence constitute a second ground for reversal. The trial judge excluded plaintiffs' Exhibits numbers 6, 7 and 8 from evidence and admitted defendant's Exhibits L and M. After a careful review of the record, we find the claims of plaintiffs are without merit.

Exhibit 6 was a copy of an agreement purporting to be a modification of the D & H-Tenney contract for the Pittsburgh demolition. The agreement was unsigned and accompanied by a cover letter from a Providence law firm to one in Chicago. The trial judge excluded the evidence as failing to comply with the "best evidence" rule. Contrary to the argument advanced by plaintiffs in their brief, it is they, and not the court, who misconceived the application of the "best evidence" rule.

■ We note first that the admission and exclusion of evidence is primarily within the discretion of the trial judge, and this determination will not be disturbed absent a showing of abuse of discretion. Control Data Corp. v. International Business Machine Corp., 421 F.2d 323 (8th Cir. 1970); Great American Ins. Co. v. Horab, 309 F.2d 262 (8th Cir. 1962); 1 J. Wigmore, Evidence § 16 (3d ed. 1940). The "best evidence" rule requires that in proving the terms of a writing where the terms are material, the original writing must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent. McCormick, Evidence § 230 (2d ed. 1972). Secondary evidence is admissible in place of the unavailable original, but only if the proponent shows that a reasonable and diligent search has been made for the original without success.

Sylvania Elec. Prod., Inc. v. Flanagan, 352 F.2d 1005 (1st Cir 1965).

■ With respect to Exhibit 6, plaintiffs have failed to make a satisfactory showing of the original's unavailability. Davis testified that he had "checked with" the D & H receiver, Mr. Sweeney, but could not get the original document. Davis' counsel then produced a Rhode Island Superior Court order relating to the original's unavailability. The trial court found that the order authorizing the records and papers in the possession of the D & H receiver to "be disposed of" was ambiguous.[5] From these facts, the trial court concluded that the showing of unavailability of the original document was inadequate; a finding which we are not persuaded should be disturbed. Sylvania Elec. Prod., Inc. v. Flanagan, 352 F.2d 1005 (1st Cir. 1965).

Exhibit 7 was a letter dated May 24, 1963 from Carl E. Glock, Jr., a Pittsburgh attorney, to Gilbert Cutler, dealing with the payment of taxes of D & H for periods prior to those in question. The trial court excluded the evidence as irrelevant since the taxes involved in this suit were those of Sixth Wrecking for the third and fourth quarters of 1963, while the letter referred to D & H taxes for 1962 and the first two quarters of 1963. All D & H taxes in Pittsburgh had been paid by the time of this action. Plaintiffs' counsel admitted that the letter related to no part of the taxes at issue. We find the decision by the trial judge to be within the scope of his discretion, and that this discretion was not abused.

■ Exhibit 8 was an indemnification agreement entered into between Davis and Tenney on October 4, 1963. By the terms of the agreement, Tenney agreed to indemnify and save Davis harmless against all just claims of the United States, the Commonwealth of Pennsylvania, and the City of Pittsburgh,

for taxes due from D & H and from Sixth Wrecking, and all just claims against Sixth Wrecking for amounts incurred with the approval of Gilbert Cutler. The trial judge excluded this exhibit. We agree with plaintiffs that this was an indemnification agreement; however, we also agree with the trial court that it was properly excluded.

We reiterate that the trial judge has broad discretion in admitting evidence, especially where the case is tried before a jury, Olin-Mathieson Chem. Corp. v. Allis-Chalmers Mfg. Co., 438 F.2d 833 (6th Cir. 1971), and the court may exclude in its sound discretion evidence relating to collateral issues. New Mexico Sav. & Loan Ass'n. v. United States Fidelity & Guar. Co., 454 F.2d 328 (10th Cir. 1972). As we view this document, Tenney has agreed to reimburse Davis for sums for which Davis may be legally liable. Clearly indemnification alone is contemplated. This is a private contract between Tenney and Davis, and regardless of the rights and liabilities which exist between these parties, the agreement has no bearing on the liability of Davis to the United States. The agreement contains no indication that Tenney had agreed to be responsible for the payment of the taxes should Davis fail to pay them. It is only if Davis is first found liable for withheld taxes that Tenney is obligated by the contract to indemnify him.

Furthermore, as the Government explained in its brief and at oral argument, the employer [through Davis, its responsible officer] was required to make monthly deposits with authorized banks.[6] These deposit periods would fall approximately on August 15 and September 15, 1963. Since the agreement was entered into on October 4, 1963, we think the district court could reasonably conclude that it was immaterial to whether or not Davis should be relieved of responsibility for the taxes.

---

5. Since some of the "disposed of" documents (in the form of checks) appeared later in the trial, it would seem that hindsight jus-

tifies the trial judge's misgivings concerning the unavailability of the originals.

6. 26 C.F.R. § 31.6302(c)–1.

■ As the last evidentiary point, plaintiffs contend that the trial court erred in admitting Exhibits L and M which were executed on October 4, 1963, and are labelled "releases." Both were signed by Davis, Exhibit L as president of Sixth Wrecking and Exhibit M as president of D & H. These exhibits evidenced Davis' position within Sixth Wrecking, and tended to establish that he was "responsible" for the withholding taxes. After considering plaintiffs' argument that the exhibits should be treated as a set, and the set either admitted or excluded *in toto* for "completeness," we find that the trial judge did not abuse his discretion in admitting Exhibits L and M and excluding Exhibit 8. No rule of "completeness" requires the admission of separate and distinct documents merely because they were executed on the same day. The completeness concept allows the admission of documents which refer to a writing previously admitted, or which are necessary for a proper understanding of a previous writing, even though no internal reference is found. We think the court did not exceed its discretion. VII J. Wigmore § 2104 (3d ed. 1940).

■ The third ground to challenge the decision below concerns the charge of the trial judge. Plaintiffs first object to specific points of the charge and we will dispose of these briefly. We affirm the use by the trial judge of that portion reading:

> Whether either or both of the plaintiffs who were officers of D & H Building Wreckers, Inc. *and who* were responsible for collecting, truthfully accounting for and paying over to the Internal Revenue Service federal withholding and Social Security taxes withheld from wages or salaries paid by said corporation during the first and second quarters of 1963, failed to do so; and whether their failure to do so was wilful [sic] within the meaning of Section 6672 of the Internal Revenue Code of 1954.

The issue of who was responsible presented a jury question. However, since the evidence was overwhelming and the charge as a whole may be read leaving the ultimate decision to the jury, we find no prejudice. There is no evidence in the record that would support any other result and therefore the alleged error would be harmless.

■ The court instructed the jury that a corporation can only act through its officers, directors and employees. This portion of the charge also brought an objection, but we find such objection without merit. The trial judge merely stated one of the most basic propositions of corporation law to the enlightenment, and not the confusion, of the jury. There is also no error in the court's charge that an individual need not be in day to day control of the administrative and financial aspects of the business in order to be the responsible person within the meaning of Section 6672, so long as he has the right to control such aspects of the business. This was a correct statement of the law. *See* Monday v. United States, 421 F.2d 1210 (7th Cir.), cert. denied, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970); Hewitt v. United States, 377 F.2d 921 (5th Cir. 1967).

■ Having found no error in the charge of the trial court as given, we must now turn to plaintiffs' allegations of error in denying their points for charge. The only significant issue presented is whether it was error for the trial court to exclude the qualification of "without reasonable cause or justifiable excuse" from the definition of "willful." "Willful" was defined as a voluntary, conscious and intentional act, without a need to show bad motive or intent to defraud the United States.

On the question of whether the definition of willful includes the element of "without reasonable cause" or "justifiable excuse" there exists a split of authority among the circuits.[7] Although some decisions have not addressed this precise issue, *see* Burden v. United

---

7. *See* Annot., 22 A.L.R.3d 8, 88–96 (1968).

States, 486 F.2d 302 (10th Cir. 1973), cert. denied, 416 U.S. 904, 94 S.Ct. 1608, 40 L.Ed.2d 109 (1974), two clearly identifiable positions can be ascertained. One line of authority, represented by Monday v. United States, 421 F.2d 1210 (7th Cir.), cert. denied, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970), holds that the test of willfulness excludes a "reasonable cause" or "justifiable excuse" element.[8] The opposite position is best exemplified by Newsome v. United States, 431 F.2d 742 (5th Cir. 1970), which recognizes a limited "reasonable cause" or "justifiable excuse" element in the definition of "willfulness."[9] At least one circuit appears to have an internal conflict on the point.[10] We have not yet had occasion to confront the issue.

After careful consideration of the arguments advanced by counsel and a careful examination of existing case law, we adopt the view enunciated in *Monday* and hold that an act is "willful" within the meaning of Section 6672 if it is voluntary, conscious and intentional; no bad motive or intent to defraud the United States need be shown, and a "reasonable cause" or "justifiable excuse" element has no part in this definition.

Several factors lead us to adopt this position. First, as the Seventh Circuit noted in *Monday,* a standard that encompasses lack of "reasonable cause" or "justifiable excuse" is a ready source of confusion. It may either inject the "bad motive" concept into the civil test of willfulness, or invite consideration of irrelevant elements such as the financial condition of business. Monday v. United

States, 421 F.2d 1210, 1216 (7th Cir.), cert. denied, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970). Further, the standard which we adopt is more likely to result in the protection of government revenue, the primary purpose of the statute. Botta v. Scanlon, 314 F.2d 392 (2d Cir. 1963). Finally, we note that while "reasonable cause" is an element of other sections of the statute,[11] it is not made so in Section 6672. We cannot assume that Congress has made an oversight in this regard. If any inference is to be drawn, it is that Congress intended lack of "reasonable cause" to be an element in certain sections of the statute and not in others. Section 6672 falls into this latter category, and we conclude, therefore, that Congress acted knowingly in excluding the lack of "reasonable cause" element from the definition of willfulness.

Plaintiffs have brought several miscellaneous points to our attention, and we will deal with each briefly.

Plaintiffs assert that the trial court erred in denying plaintiffs' counsel the opportunity to state on the record his objections, with the reasons therefor, to the court's failure to give plaintiffs' requested jury instructions, as required by Rule 51. As this court has previously stated:

> The object of this rule is to afford the trial judge an opportunity upon second thought, and before it is too late, to correct any inadvertent or erroneous failure to charge. The rule also serves to lessen the potential burden of appellate courts by diminishing the number of rulings at the trial

---

**8.** *See also,* McCarty v. United States, 437 F. 2d 961, 194 Ct.Cl. 42 (1971); United States v. Strebler, 313 F.2d 402 (8th Cir. 1963); Bloom v. United States, 272 F.2d 215 (9th Cir.), cert. denied, 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146 (1960).

**9.** The view expressed in *Newsome* has found its greatest development in the Fifth Circuit. *See,* Gefen v. United States, 400 F.2d 476 (5th Cir. 1968); Cash v. Campbell, 346 F. 2d 670 (5th Cir. 1965); Frazier v. United States, 304 F.2d 528 (5th Cir. 1962).

**10.** *Compare,* Datlof v. United States, 252 F.Supp. 11 (E.D.Pa.), aff'd 370 F.2d 655 (3d Cir. 1966), cert. denied, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624 (1967) *with* United States v. Slattery, 224 F.Supp. 214 (E.D.Pa.1963), aff'd per curiam, 333 F.2d 844 (3d Cir. 1964).

**11.** *See, e. g.,* Int.Rev.Code of 1954 §§ 6651, 6652, 6656.

which they may be called upon to review. Marshall v. Nugent, 222 F.2d 604, 615 (1st Cir. 1955).

Application of Rule 51 also prevents counsel from shielding himself behind a recitation of numbered points and then developing these points on appeal when the trial judge has not had sufficient opportunity to consider the objections. *See* United States v. Lachmann, 469 F.2d 1043 (1st Cir. 1972), cert. denied, 411 U.S. 931, 93 S.Ct. 1897, 36 L.Ed.2d 390 (1973).

The record below indicates that the plaintiffs' counsel discussed the requested instructions with the trial judge in chambers at length. Further extensive discussion on the record would not advance the purpose of Rule 51 since all objections had already been painstakingly considered. Plaintiffs' counsel did briefly state their exceptions on the record, as well as their reasons for objecting to the charge as given. The trial judge indicated he was familiar with the decision in *Lachmann* and had fully examined the plaintiffs' points for charge. We are satisfied on these facts that the policies of both Rule 51 and *Lachmann* were substantially met.

Plaintiffs also object to the court's failure to give certain requested instructions. The function of the appellate court with respect to jury instructions is to satisfy itself that the instructions show no tendency to confuse or mislead the jury with respect to the applicable principles of law. Delancey v. Motichek Towing Service, Inc., 427 F.2d 897 (5th Cir. 1970). The fairness of the charge cannot be determined by considering only a portion out of context, the entire charge must be examined. Charles A. Wright, Inc. v. F. D. Rich Co., 354 F.2d 710 (1st Cir.), cert. denied, 384 U.S. 960, 86 S.Ct. 1586, 16 L.Ed.2d 673, rehearing denied, 385 U.S. 890, 87 S.Ct. 14, 17 L.Ed.2d 122 (1966). The purpose of jury instructions is to advise the jury on the proper legal standards to be applied in determining issues of fact as to the case before them. Daly v. Moore, 491 F.2d 104 (5th Cir. 1974).

The trial court is not obligated to give instructions which are erroneous or misleading, Hiatt v. New York Cent. R. R., 411 F.2d 743 (7th Cir. 1969), nor to use the precise words proposed by one party in its instructions; it is sufficient if the principle of law is correctly stated. Gray v. Shell Oil Co., 469 F.2d 742 (9th Cir.), cert. denied, 412 U.S. 943, 93 S.Ct. 2773, 37 L.Ed.2d 403 (1973). Applying these standards, we find no error in the charge of the trial court.

Plaintiffs' remaining assignments of error are patently without merit. We have considered each of them and find no ground for reversal.

Affirmed.