UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 94-1105

MICHAEL JOHNSON, ET AL.,

Plaintiffs - Appellants,

v.

NATIONAL SEA PRODUCTS, LTD., ET AL.,

Defendants - Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. W. Arthur Garrity, Jr., Senior U.S. District Judge]

Before

Torruella, Selya and Cyr

Circuit Judges.

Joseph G. Abromovitz, with whom Marsha A. Morello, George F.

Leahy and Abromovitz & Leahy, P.C., were on brief for appellants.

Brian P. Voke, with whom Richard P. Campbell, Kathleen M.

Guilfoyle, Campbell & Associates, P.C., David T. DeCelles, and

Avery, Dooley, Post & Avery, were on brief for appellees.

September 20, 1994

TORRUELLA, Circuit Judge. Appellants Michael and Kelli

Johnson ("plaintiffs") filed an action alleging negligence and

breach of warranty against defendant National Sea Products, Ltd.,

in connection with injuries that Michael Johnson ("Johnson")

suffered when a pallet of frozen fish fell upon him. At trial,

the jury found in favor of the defendant on the negligence claim.

The court directed a verdict for the defendant on plaintiffs'

breach of warranty claim. Plaintiffs ask this court to grant

them a new trial due to errors allegedly committed by the

district court. Plaintiffs also ask this court to reverse the

district court's order directing a verdict on the breach of

warranty claims. We affirm the district court in all respects.

I.

BACKGROUND

On May 19, 1989, Michael Johnson was injured when a

pallet loaded with boxes of frozen cod fillets ("the fish") fell

on him while he was working as a stock-loader at Condyne, Inc., a

public warehouse in Avon, Massachusetts, which stored frozen

foods.

National Sea is a Canadian corporation engaged in the

business of harvesting, processing and distributing fish. Among

their many products are Hi-liner cod fillets which are frozen,

packed in sealed plastic containers, placed in boxes, and then

packed into "master cartons" for shipment. Before being shipped,

National Sea piles the master cartons on several 40" x 48" wooden

pallets and applies a plastic stretch wrap to hold the cartons

-2-

together and to keep them from falling off the pallet.

National Sea consists of two corporations: National Sea

Products, Ltd., a Canadian company, and National Sea Products,

Inc., a United States company. The Canadian corporation is the

parent company, and the United States corporation is a wholly

owned subsidiary. These corporations are, in turn, divided into

several operating units, among which is Canada Products-Corporate

Sales ("Canada Products"), a division of the Canadian

corporation, with responsibility for servicing major accounts.

One of Canada Products' major accounts was Long John

Silver, also known as Jerrico, Inc., which was expected to be the

purchaser of the fish involved in this case. The fish was

processed and packaged according to specifications provided by

Long John Silver and the cartons were placed on the pallets for

shipment according to Long John Silver's specifications for

pallet configuration, which required that each layer have eight

cartons and that there be five layers on the pallet. Sometimes,

for storage at its Lunenburg, Nova Scotia plant, National Sea

uses a different pallet configuration for these cartons, placing

them ten cartons to a layer, three layers high.

Although the fish involved in this case were prepared,

packaged and placed on pallets to Long John Silver's

specifications, in anticipation of a possible order, there was,

at the time of Johnson's accident, no order by Long John Silver

for these fish.

The fish in question were shipped from the Canadian

-3-

corporation to Canada Products care-of the Condyne public

warehouse. Generally, when the shipment arrives at Condyne, a

bill for storage is generated and sent to the American

corporation, which enters the shipment in its records and is

responsible ultimately for paying the storage bill. The

ownership of the goods does not pass, however, until the end of

the month when there is an intercompany financial reconciliation

of all transferred products. Ultimately, Long John Silver

purchased the fish in question. The fish, however, were not

purchased or shipped to Long John Silver until the following

month, long after the accident.

When the shipment of fish arrived at Condyne, the

Condyne receiver ordered the truck driver, an employee of

Carleton County Brokerage, Ltd.,1 to remove the top layer from

each of the pallets, reducing them to four layers of eight

cartons each, and to make up new pallet loads with the removed

boxes. Apparently this was done so that the pallet loads would

fit into Condyne's rack storage system. After the truck driver

had reconfigured the boxes on the pallets, the shipment was 22

pallet loads instead of the original 17.

Rather than placing the fish in the rack storage

facilities, however, Johnson, using a forklift, bulk stacked or

1 Plaintiffs' original suit included Harold B. Legge Transport,
Ltd. as trucking agent for National Sea. Subsequent discovery
revealed that Legge had contracted with Carleton County Brokerage
Ltd. to ship the subject load. Hence, Carleton was added as a
direct defendant. During the course of trial, plaintiffs and
Carleton settled.

-4-

free stacked the fish by piling one pallet load on top of

another, four pallet loads high with a fifth pallet load spanning

the gap between each stack of four. Each pallet load was four

feet high, and weighed over one ton. Johnson was piling these

heavy loads 16 to 20 feet high.

Johnson testified that the accident occurred as he

stacked the pallet loads four and five loads high. He testified

that as he attempted to move the two highest pallet loads in the

stack, the top pallet fell. Johnson jumped from the truck and

ran, but was hit by the pallet load. There is no evidence as to

whether the pallet which fell had been configured by National Sea

or by Carleton's driver.

In his suit, Johnson alleged that National Sea, as

seller of the fish, packaged the fish in an unstable palletized

configuration rather than National Sea's own recommended 3 x 10

configuration. The method of stacking by National Sea created a

condition referred to by the witnesses as "pyramiding" when the

pallets of fish were bulk stacked, i.e., one pallet stacked atop

another, four or five pallets high.

The trial in the district court commenced on November

29, 1993. Much of the trial concerned whether National Sea

should have foreseen that the pallet loads of fish would be bulk

stacked four or five loads high rather than stored in racks. It

was undisputed that the pallet configuration of the cartons of

fish was entirely safe for rack storage and that Johnson would

not have been injured if the pallet loads had been placed in

-5-

racks at Condyne.

Following the close of the evidence, the district court

judge granted National Sea's motion for a directed verdict on

plaintiffs' breach of warranty counts because it found that the

goods had not reached an ultimate consumer and therefore, no

warranties attached. On December 16, Rule 49(b) interrogatories

were submitted to the jury.

The jury answered the following interrogatory in the

negative, thereby precluding further response to the subsequent

interrogatories and disposing of the case in favor of National

Sea:

Was it reasonably foreseeable by the
Defendant, National Sea Products, Ltd.
that the pallet loads in question would
be stacked at Condyne Freezers by a
forklift truck one on top of another to a
level of four/five pallet loads high?

On appeal, the plaintiffs contend that: 1) the district

court erred in granting National Sea's motion for a directed

verdict as to the plaintiffs' breach of warranty claims; 2)

statements made by defense counsel during closing argument were

improper and resulted in reversible error; and 3) the court erred

in instructing the jury on the issue of foreseeability and

defective design.

II.

DISCUSSION

A. Breach of Warranty Claims

The plaintiffs claim that Michael Johnson was entitled

to benefit from warranties of merchantability and that the

-6-

district court erred in dismissing their breach of warranty

claims. Under Massachusetts law, "a warranty of merchantability

is implied in two situations: (1) when title to goods passes for

a price, and (2) when a contract is made for the future passing

of title to goods for a price." Mason v. General Motors

Corporation, 397 Mass. 183, 187-88, 490 N.E.2d 437, 440 (1986).

Plaintiffs have not presented any evidence showing that

there was a sale of goods, or any contract for sale, particularly

one involving themselves. Therefore, we need not determine

whether Johnson was a member of the class of persons entitled to

benefit from any warranties of merchantability that might attach

to a sale of the fish.

There was no evidence of a sale of goods between

National Sea and Long John Silver. Rather, the evidence

indicates that at the time of the accident, Long John Silver had

not yet placed an order for these fish, and that the fish might

have been sold to anyone. There was no contract for sale between

National Sea and Long John Silver: no price had been determined,

no delivery date had been set, and no quantity or other terms had

been specified.

Nor was there a sale or contract for sale from the

National Sea parent to the United States subsidiary. The fish

were owned, at the time of the accident, by Canada Products, a

division of the Canadian corporation. The fish could have been

sold at the end of the month to the United States corporation at

a price to be determined at that time, but that was not a

-7-

certainty. Instead, the fish might have been disposed of or

returned to Canada prior to any transfer. Under these

circumstances, absent any sale of the fish or contract for the

sale of the fish, no warranty of merchantability could have

attached.

A directed verdict is appropriate where the evidence is

such that a reasonable person could be led to only one

conclusion, namely, that the moving party is entitled to judgment

as a matter of law. Luson Int'l Distributors, Inc. v.

Fabricating & Production Machinery, Inc., 966 F.2d 9, 10-11 (1st

Cir. 1992). Therefore, the district court did not err in

directing a verdict on this issue.

B. Defense Counsel's Closing Argument

As grounds for a new trial, the plaintiffs charge that

National Sea's counsel, Mr. Richard Campbell, engaged in improper

arguments in two respects. First, the plaintiffs argue that

Mr. Campbell referred to supposedly excluded evidence, that this

reference prejudicially influenced the jury, and as such,

constituted reversible error. In his closing argument, counsel

argued that National Sea did not learn that their product was

being bulk stacked on top of another, four or five high, until

representatives of National Sea, Morgan Palmer and Walter

Waldrop, went to Avon after the accident in August, 1989. Mr.
Campbell told
the jury:

So National Sea Products never was told
that this stuff was being bulk stacked
one pallet on top of another. Never.
National Sea Products didn't learn that

-8-

these pallets were being bulk stacked one
on top of another, four or five high,
until Morgan Palmer and Walter Waldrop
went down to Avon in August, 1989.
August, 1989.

Plaintiffs' counsel immediately objected to this

reference, contending that such testamonial evidence had been

excluded by the court. Following plaintiffs' objections to this

statement, Mr. Campbell made efforts to remind the judge that

evidence of these facts was not entirely excluded. Despite these

efforts, the court gave the following "curative" instruction:

[T]he Court's recollection is clear that
the evidence was excluded. But I'll tell
the jury: You might have a different
recollection. You may have heard that
statement in the course of the testimony
of the witness, in which event you may
consider it. If, on the other hand--it's
my recollection and that of the
plaintiff's counsel that the Court
excluded it for the basic reason because
it happened subsequent to the accident.
That was the basis of the Court's ruling.
And I do believe it was excluded.

Plaintiffs contend that the trial judge's curative

statements were not sufficient to erase the prejudicial effect of

defense counsel's reference to the excluded testimony. We need

not determine whether the curative instructions were satisfactory

because our review of the record reveals that this evidence was

not excluded by the court and therefore, the defense counsel's

argument was not inappropriate.

During Morgan Palmer's testimony, the following

exchange took place:

Q. Sir, in May, prior to May 19, 1989,
what was your understanding with regard

-9-

to how National Sea Products Limited's
product was being stored at the Avon
facility of Condyne?

A. It was being put into racks.

Q. Did there come a time, sir, when you

learned that the product was not being

stored in racks?

A. In August --

MR. LEAHY: Objection.

THE COURT: Excuse me. The objection is

overruled in the sense that you can

answer the question, "Yes, there came a
time," and then there will be a question.

Q. Let me try again.
Did there come a time, sir, when you
learned that National Sea Products
Limited's products were not being stored
in racks at the Avon facility of Condyne?

A. Yes.

Q. When was that?

A. That was in August of 1989.

MR. LEAHY: Objection.

THE COURT: Excuse me?

MR. LEAHY: Objection.
I noted an objection. He said August of
1989, and that's post accident, your
Honor.

THE COURT: He answered the question and
the answer may stand.

Q. Can you tell the jury, sir, what the
circumstances were by which you learned
that the product was being stored outside
of a rack at the Avon facility in August
of 1989?

MR. LEAHY: Objection.

THE COURT: Objection sustained.

-10-

Q. Did you personally visit the Avon
plant in August of 1989?

A. Yes.

(emphasis added).

Thus, while the court excluded certain observations as

post-accident, it clearly admitted testimony indicating that

National Sea first learned its products were not being stored in

Condyne's racks in August of 1989 and that Morgan Palmer went to

Condyne's plant in August of 1989. Its rulings in this regard

have not been challenged on appeal. Because this case concerned

only two types of storage: storage in racks or bulk stacking, it

was reasonable to infer from the evidence admitted that if the

products were not being stored in racks, they were being bulk

stacked.

The trial judge had broad discretion to deal with

supposed improprieties in closing arguments, and absent an abuse

of discretion, we will defer to his or her actions in this

regard. Gonz lez-Mar n v. Equitable Life Assurance Soc., 845

F.2d 1140, 1147-48 (1st Cir. 1988). Far from abusing his

discretion, the trial judge in this case gave an unnecessary

curative instruction, which if anything, could have caused harm

to the defendants, not the plaintiffs.

The plaintiffs point to another allegedly improper

aspect of Campbell's closing argument, which they raised for the

first time in their post-trial motion for a new trial. The

plaintiffs claim that Mr. Campbell displayed to the jury a

Condyne brochure which was not in evidence to show that Condyne

-11-

promoted its rack storage facilities. A review of the transcript

of Mr. Campbell's closing argument, however, does not reveal any

objection on behalf of plaintiffs to this alleged brochure-

waiving. Since a timely objection was not made, the issue was

not preserved for appeal. See Doty v. Sewall, 908 F.2d 1053,

1056 (1st Cir. 1990). Our review is therefore limited to plain

error. Id.

Our review of the record does not reveal any statement

indicating that a Condyne brochure of promotional materials was

displayed before the jury. Mr. Campbell also submitted an

affidavit in response to the plaintiffs' motion for a new trial,

that denies that any brochure was shown to the jury during his

closing argument. Because there is absolutely no evidence in the

record that the alleged brochure waiving actually occurred, nor

any objection on behalf of the plaintiffs, we find that

plaintiffs' claim has no merit.

C. Jury Instructions on Foreseeability

The plaintiffs complain that the court erred by

refusing to charge the jury with their requested instruction in

Request Number 55. Request Number 55 stated:

a manufacturer has a duty to anticipate
the environment in which it's [sic]
product will be used and to design
against the reasonably foreseeable risk
attending the products used in that
setting.

The plaintiffs contend that the product in question

included not only the frozen fillets of fish packed within each

box but also the method by which National Sea stacked the boxes

-12-

of frozen fish one atop another and then stretch-wrapped each

pallet for shipment. Plaintiffs argue that it was foreseeable to

National Sea that the product would be bulk stacked at Condyne.

They maintain that National Sea, therefore, had a duty to

anticipate that the product would be bulk stacked at Condyne and

to design their product in a manner that took into account the

alleged reasonably foreseeable risks of bulk stacking.

Plaintiffs contend that whether National Sea fulfilled its duties

in this respect was an issue that should have been submitted to

the jury and that no other part of the court's charge addressed

this particular claim.

"An error in jury instructions will warrant reversal of

a judgment only if the error is determined to have been

prejudicial, based on a review of the record as a whole." Davet

v. Maccarone, 973 F.2d 22, 26 (1st Cir 1992). We examine the

jury instructions to determine "whether they adequately explained

the law or whether they tended to confuse or mislead the jury on

the controlling issues." Id. at 26 (internal quotation and

citation omitted).

We do not find reversible error in the court's charge

to the jury. In the present case, the alleged defect was the

manner in which cartons of fish were stacked on the pallet. The

plaintiff bears the burden to show that his use of the product

was a foreseeable one, regardless of whether or not it was the

intended use of the product, and "[w]here there is no foreseeable

use, there is no liability." Allen v. Chance Mfg. Co., 398 Mass.

-13-

32, 34, 494 N.E.2d 1324, 1326 (1986).

The court charged the jury on the subject of National

Sea's obligation to consider the reasonably foreseeable

circumstances and foreseeable dangers involved in the packaging

and palletizing of its product, and to guard against foreseeable

harm as follows:

"Ordinary care" is not an absolute term
but a relative one; that is to say, in
deciding whether ordinary care was
exercised in a given case, the conduct in
question must be viewed in the light of
all the surrounding circumstances as
shown by the evidence in this case. The
amount of care exercised by a reasonably
prudent person will vary in proportion to
the danger known to be involved in what
is being done, and it follows that the
amount of caution required in the use of
ordinary care will vary with the nature
of what's being done and all the
surrounding circumstances shown by the
evidence in the case. To put it another
way: As the danger that should reasonably
be foreseen increases, so the amount of
care required by the law increase[s].

Bringing those principles closer to the
facts of this case, the defendant was not

required to package and palletize its

cartons in a way that made them accident

proof or even to package or palletize

them in the safest possible way, but,

rather, to package and palletize them in

a manner that is reasonable under the

circumstances. Its duty was, rather, one

of reasonable care to protect against

foreseeable harm.

(emphasis added).

This instruction was accurate and no further

instructions were required by law. Because the instructions

"show no tendency to confuse or mislead the jury with respect to

-14-

the applicable principles of law," they are satisfactory and must

be upheld. Harrington v. United States, 504 F.2d 1306, 1317 (1st

Cir. 1974).

Affirmed.

-15-