United States Court of Appeals
For the First Circuit

No. 97-2011

FREDERICK C. MELTZER,

Plaintiff, Appellee,

v.

COMERICA, INC. and MUNDER CAPITAL MANAGEMENT,

Defendants, Appellants.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy J. Gertner, U.S. District Judge]


Before

Boudin, Circuit Judge,

Aldrich, Senior Circuit Judge,

and Lynch, Circuit Judge.



Gary D. Friedman with whom Kenneth M. Bello, Joseph P. Curtinand Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. were on
brief for appellants.
Frank J. Teague with whom Edward T. Patten and Mills, Teague
& Patten were on brief for appellee.

April 3, 1998

BOUDIN, Circuit Judge. Frederick Meltzer brought suit in
state court, claiming that he had been discharged without cause and
without the compensation specified in his employment contract. The
case was removed to federal court based on diversity of
citizenship. Following a trial, the jury found in favor of Meltzer
and awarded him almost $400,000 in damages. This appeal by the
district-court defendants followed.
The main issue on appeal is whether the defendants were
entitled to judgment notwithstanding the verdict. In substance,
defendants claim the jury was obliged to find that Meltzer had
engaged in "an act of serious misconduct" which under his contract
would have justified dismissal without further compensation. We
set forth the facts in the light most favorable to the verdict. 
Transamerica Premier Ins. Co. v. Ober, 107 F.3d 925, 929 (1st Cir.
1997).
In 1993, Comerica, Incorporated, formed a wholly owned
subsidiary, World Asset Management. The following year the new
subsidiary hired Meltzer as the managing director of its fixed
income bond department. To lure him away from his job with an
established Boston firm, World Asset Management gave him a three-
year contract at a high salary with a guaranteed minimum bonus. 
The contract provided that if terminated without cause, Meltzer
would receive the balance of compensation specified for the entire
contract. "Cause" was further defined as including "an act of
serious misconduct."
During 1994, World Asset Management had under lease a
portable computer terminal from Bloomberg LP, a device known in the
trade simply as a "Bloomberg," providing access to real-time stock
and bond market quotes and other information. Meltzer's company
also leased software, used in risk management for bond portfolios,
from Capital Management Sciences, a competitor of Bloomberg LP. 
World Asset Management secretly lent the Bloomberg computer to
Capital Management Sciences in exchange for a discount on the cost
of the risk-management software.
The persons primarily responsible for the decision to
loan the Bloomberg were Meltzer's superior, Charles Kelso (CEO of
World Asset Management) and Meltzer's subordinate, Jonathan Jensen. 
Meltzer was present at the meeting in which Jensen proposed the
loan and Kelso approved it. According to Meltzer, he made no
comment on the proposal, nor did he attempt to raise the matter
with higher level officials at Comerica. The meeting was in
September 1994, and the Bloomberg was actually loaned to Capital
Management Sciences in December 1994.
In the meantime, Comerica affiliated itself with another
company, Munder Capital Management, and the two companies
reorganized World Asset Management as a partnership between them. 
Kelso was replaced as head of World Asset Management by Stephen
Albrecht. Meltzer said at trial that he told Albrecht about the
loan of the Bloomberg during December 1994, and Albrecht approved
the plan. In any event, Albrecht made further inquiries of Meltzer
in February 1995 and ultimately told Meltzer to retrieve the
Bloomberg, which Meltzer did.
In February 1995, Albrecht discharged Meltzer,
purportedly on the ground that his involvement in the loan of the
Bloomberg constituted "serious misconduct." Meltzer in turn
brought the present action against Comerica and the Munder firm. 
The defendants accept responsibility for carrying out World Asset
Management's employment contract with Meltzer but insist that he
was fired for cause. In returning a verdict in Meltzer's favor,
the jury found by special verdict that Meltzer had not engaged in
"an act of serious misconduct."
The parties agree that Meltzer's employment contract must
be construed in accordance with Michigan law. The defendants point
us to case law in Michigan holding that an employer can establish
its own standards for job performance and can dismiss for cause any
employee who fails to adhere to those standards, even if the judge
or the jury might think that the standards were unreasonably
demanding. See Toussaint v. Blue Cross & Blue Shield of Michigan,
292 N.W.2d 880, 897 (Mich. 1980). The gist of defendants' argument
on appeal is that the loan of the Bloomberg was manifestly improper
and that Meltzer's "participation" or "involvement" necessarily
constituted "serious misconduct" providing cause for his
termination.
Defendants argue at length that the loan violated the
terms of the Bloomberg contract, the general provisions of the
Comerica's code of ethics requiring employees to safeguard
confidential information, and other civil and criminal
restrictions. It is sufficient for us that the extent of Meltzer's
involvement or participation in the loan was disputed and that on
one reading of the evidence he was no more than minimally
connected. The jury was thus free to conclude that even if the
loan were serious misconduct, Meltzer's connection to it was not
"serious misconduct" on his part.
Defendants next assert that they were entitled to an
instruction that, although Meltzer asserted that Kelso had approved
the loan, "[i]t is not a defense that a supervisor authorized
unlawful, unethical or unreasonable acts to be performed." The
defendants' proposed instruction contained other language that the
district court did adopt, including the tamer statement that "[a]n
employer [sic] only has a duty to follow a supervisor's orders if
those orders are lawful," and "[a]n employee cannot be discharged
for refusing to perform an unlawful act." But obviously the
additional language requested by the defendants would have been
even more helpful to them.
The difficulty is that the key sentence that the district
judge refused to charge seems to us to be misleading in the context
of these facts. While there is certainly some behavior that a
supervisor cannot "authorize," in the present case Kelso's alleged
approval had at least some bearing on the question whether
Meltzer's failure to report or interfere with the transaction was
"serious misconduct." Being unbalanced, the instruction as framed
by the defendants did not have to be given. See Harrington v.
United States, 504 F.2d 1306, 1317 (1st Cir. 1974).
The defendants further object that Meltzer's post-
termination earnings should have been offset against his
compensation due under the contract. Well before the scheduled
trial, defendants stipulated that if Meltzer was not discharged for
serious misconduct, then his damages were the specific amount
calculated under his contract for the remainder of the three-year
term, specifically, $398,773.97. Ten days prior to trial the
defendants moved to set aside that stipulation, and, several days
later, they moved to amend their answer to assert an affirmative
defense of actual mitigation.
We see no error in the district court's decision that
defendants' last-minute attempted change of position should not be
allowed because of the extreme delay and the prejudice to Meltzer. 
See Grant v. News Group Boston, Inc., 55 F.3d 1, 5 (1995) (denial
of leave to amend reviewed for abuse of discretion). This makes it
unnecessary to consider the district court's alternative ruling
that, under the language of the contract, Meltzer was entitled (if
discharged for cause) to the balance of the prescribed compensation
with no reduction on account of post-termination earnings
elsewhere.
Finally, defendants' brief challenges several rulings by
the district judge on the admissibility of evidence during trial. 
We have examined her rulings and concluded that they are either
correct or, if not, that they did not constitute prejudicial error. 
Without going into detail, it is plain that the result of the case
would have been no different if each of the three challenged
rulings had been resolved by the trial judge in favor of the
defendants.
Affirmed.