**Larry H. NICHOLS, Plaintiff,**

**v.**

**CITY OF JACKSON; Joseph L. Donovan, Individually and In His Official Capacity, Joseph N. Graham, Individually and In His Official Capacity, Defendants.**

Civ. A. No. J92–CV–0532(L)(N).

United States District Court,
S.D. Mississippi,
Jackson Division.

March 31, 1994.

---

S. Dennis Joiner, Joiner & Polk, Jackson, MS, for plaintiff.

Michele M. Purvis, Craig E. Brasfield, William A. Gowan, City Prosecutor's Office, Leyser Q. Morris, Jackson Police Dept., Jackson, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendants City of Jackson (City), Joseph L. Donovan and Joseph N. Graham for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Larry Nichols filed a response and, having considered the memorandum of both parties as well as other relevant authorities, the court concludes that defendants' motion should be granted in part and denied in part.

Plaintiff, a former City fireman, brings this federal question suit pursuant to 42 U.S.C. § 1983, and alleges that defendants suspended him in violation of his constitutional rights.[1] Specifically, he alleges that they discriminated against him on the basis of his race in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment, violated his First Amendment rights and denied him constitutional due process. He also claims that his suspension was part of the fire department's plan to replace firemen, ages forty to seventy—which included Nichols, a fifty-year-old—with younger men, which he claims violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.

1. Plaintiff originally filed this complaint in the Circuit Court of Hinds County, Mississippi. It was subsequently removed on the basis of this court's federal question jurisdiction.

## Background

On or about June 17, 1992, plaintiff, a twenty-year employee of and captain in the Jackson Fire Department, allegedly was involved in an altercation with a fellow fireman, Captain Hayman. Apparently, this dispute arose over the ownership of an extension cord. Nichols' deposition testimony indicates he became angry when Hayman failed to listen to his explanation as to the ownership of the cord. The dispute escalated into violence when Nichols, the aggressor in this altercation, grabbed Hayman by the head and began to shake it.

Donovan, in his capacity as the City's fire chief, received notification of this incident and directed Graham, the assistant fire chief, to conduct an investigation into the incident and provide a recommendation of punishment. On June 29, 1992, after completing his investigation, Graham recommended that plaintiff be suspended for sixty days without pay. Donovan approved the recommendation the same day. The official reason cited by Donovan for plaintiff's suspension was violation of Civil Service Rule XII, sec. 2.1.1., parts F and M—offensive conduct or language toward a fellow officer and conduct unbecoming to a city employee. This suspension was to begin on July 1, 1992; Nichols resigned on June 30, 1992, one day before the suspension took effect. He filed this suit shortly thereafter, alleging numerous claims against defendants, which the court will now address.

## Analysis

### 1. Procedural Due Process

■ The Fourteenth Amendment forbids states from depriving an individual of life, liberty or property without due process. Evaluation of a procedural due process claim is a two-step process. The first step requires the court to decide whether a protected life, liberty or property interest exists. The second step is a court determination of what process is required in the situation.[2]

2. Due process requirements are not the same in every situation. Rather, the amount of process required varies according to the circumstances of the deprivation. Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The three factors normally weighed in determin-

■ Pursuant to this analysis, the court must conclude that plaintiff did possess a constitutionally protected property interest in his employment. Property interests "are created and defined by existing rules or understandings that stem from an independent source such as state law...." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Plaintiff's property interest in his employment was created by Miss.Code Ann. § 21-31-21 and § 21-31-23 (1972), which provide that civil service employees cannot be discharged except for cause. *See Pinson v. Hendrix*, 493 F.Supp. 772, 777 (N.D.Miss.1980) (recognizing that these sections create constitutional property interest); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (property interest created by similar Ohio statute). That being shown, the second inquiry is what due process, if any, is required.

Plaintiff has claimed that defendants failed to provide him due process prior to his suspension.[3] Though there is an abundance of case law defining the process due in many situations, the Supreme Court has not clearly defined what process, if any, is to be afforded to public employees prior to a suspension, nor has the court been able to locate any Fifth Circuit authority on this point. However, in the court's opinion, some procedural due process normally would be required prior to a sixty-day suspension without pay.

In *Cleveland Board of Education v. Loudermill*, the Court ruled that public employees must be given a pre-termination hearing.[4] *Loudermill*, 470 U.S. at 542, 105 S.Ct. at 1493. The Court concluded that "an essential element of due process is that a deprivation of life, liberty, or property be 'preceded by notice and an opportunity for a hearing appropriate to the nature of the case.'" *Id.* (citations omitted). This was described as the "root requirement" of due process. *Id.* And, although the Court has not precisely defined what process is due prior to suspending a public employee, in *Goss v. Lopez*, 419 U.S. 565, 582, 95 S.Ct. 729, 740, 42 L.Ed.2d 725 (1975), it did rule that a student suspended, even for a period of less than ten days, is entitled to notice of the charges, an explanation of the accusations against him and an opportunity to explain his conduct prior to suspension. These cases, taken together, persuade the court that a public employee suspended without pay for sixty days is entitled to, at least, the pre-suspension protection afforded school children. *See Bartlett v. Fisher*, 972 F.2d 911, 915 (8th Cir.1992) (*Loudermill* and *Goss* standards apply to suspension of public employee who has property interest in retaining job).

Defendants, nevertheless, contend that Nichols' claim is unfounded, and maintain that under the Fifth Circuit's analysis in *Shawgo v. Spradlin*, 701 F.2d 470, 475 (5th Cir.1983), the court must conclude that plaintiff was not entitled to due process prior to his suspension. *Id.* In *Shawgo*, the plaintiff, a city policeman, was suspended for twelve days without pre-suspension notice or a hearing. The officer was a covered employee under the Texas Civil Service Act, which did not provide for pre-suspension hearings. It did, however, provide for post-suspension review. The court concluded that since property interests were to be determined by state law and the statute in question did not provide for pre-suspension hearings, no constitutionally protected property interest was af-

ing the required amount of process are the importance of the individual interests involved, the value of specific procedural safeguards to that interest and the government interest in administrative efficiency. *Id.*

3. Two procedural due process claims can be gleaned from plaintiff's complaint. He alleges that defendants failed to provide him pre-suspension due process, which the court will now address. He also claims that defendants provided him no process in connection with his alleged constructive termination. The issue of constructive discharge will be discussed *infra*.

4. Although the Court did not require that a full evidentiary hearing be held prior to discharge, it did conclude that some type of informal hearing was called for. Specifically, the Court found that a public employee "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" prior to termination. *Loudermill*, 470 U.S. at 546, 105 S.Ct. at 1495.

fected by the police chief's decision to suspend the plaintiff. *Id.* Stated otherwise, the Fifth Circuit concluded that the state statute which purportedly created the property interest defined it as well.

Defendants request this court to apply the same analysis, pointing out, as in *Shawgo,* that the Mississippi Civil Service Act does not expressly provide for pre-suspension proceedings. Instead, Miss.Code Ann. § 21–31–23 requires only that suspended civil service employees be provided a post-suspension investigation upon request.[5] Defendants reason, therefore, that the Mississippi statute does not create a sufficient property interest to justify any type of pre-suspension process. The court cannot agree, since this approach has been expressly rejected by the Supreme Court.

Defendants' argument is similar to one advanced by the appellants in *Loudermill, supra.* They argued that a "property right is defined by, and conditioned on, the legislature's choice of procedures for its deprivation," and that to provide more process than is allowed by the state statute would unduly expand the scope of the property interest. *Loudermill,* 470 U.S. at 539, 105 S.Ct. at 1492. The Court rejected this argument. It found that a constitutionally protected property interest was created by the Ohio Civil Service Act, which provided that civil services employees could only be discharged for cause. *Id.* at 539, 105 S.Ct. at 1491–92. A virtually identical clause is found in the Mississippi Civil Service Act. *See* Miss.Code Ann. § 21–31–21 and § 21–31–23. The Court concluded that, even though the entitlement, i.e., property interest, arose from

state statute, this did not give the state the power to define the procedures used to protect that right. Instead, "minimum procedural requirements are a matter of federal law, and are not diminished by the fact that the state may have specified its own procedures...."[6] *Loudermill,* 470 U.S. at 541, 105 S.Ct. at 1492. (citations omitted). Consistent with *Loudermill,* the pre-suspension due process which defendants were constitutionally required to extend to Nichols prior to his suspension is a matter of federal, not state law.[7] Thus, the court concludes that defendants' request to dismiss on this basis should be denied.

Defendants also claim that plaintiff's due process claim must fail since he voluntarily resigned. In support of this proposition, they cite several cases in which the Fifth Circuit has concluded that a plaintiff who voluntarily resigns waives his guarantee of due process. *See Bury v. McIntosh,* 540 F.2d 835 (5th Cir.1976) (an employee who voluntarily resigns is entitled to no pre-termination process); *Daly v. Moore,* 491 F.2d 104 (5th Cir.1974) (same). Defendants' contention that plaintiff voluntarily resigned is, of course, disputed by plaintiff, who claims that the suspension amounted to a constructive discharge. However, the question of whether his was a voluntary resignation or a constructive discharge need not be decided in order to properly resolve this due process issue, since the cases cited by defendants relate only to pre-*termination* process, as opposed to pre-*suspension* process.

Both *Bury* and *Daly* are based on the rationale that an employee who voluntarily resigns has not been terminated. From that

---

**5.** Miss.Code Ann. § 21–31–23 provides that: [a]ny person ... suspended ... may within ten (10) days from the time of such disciplinary action, file with the Commission a written demand for an investigation, whereupon the Commission shall conduct such investigation.

**6.** The Court explained that the appellants' misconception as to the nature of the property interest and the process due had its nexus in a plurality opinion of the Supreme Court, which stated that "where the grant of a substantive right is intertwined with the limitations on the procedures which are to be employed in determining that right, the litigant ... must take the bitter with the sweet." *Arnett v. Kennedy,* 416 U.S.

134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). This principle was subsequently reiterated in *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), a case upon which the Fifth Circuit relied heavily in reaching its decision in *Shawgo.* In *Loudermill,* however, the Court expressly overruled *Arnett* and *Bishop* as to this issue and thereby rejected the very principles upon which *Shawgo* was based. Defendants' reliance on *Shawgo* is, consequently, unwarranted. *See Loudermill,* 470 U.S. at 539, 105 S.Ct. at 1491. (overruling *Arnett* and *Bishop* ).

**7.** The court defined the federal process required *supra.*

premise, it follows that no pre-termination process is required. That is, clearly, if any employee chooses to resign, he cannot be heard to complain that he was not afforded pre-termination process. In the court's opinion, though, this case is not governed by *Bury* and *Daly* because, here, no issue is presented as to the necessity of pre-termination process. Rather, here, prior to any act on his part to end his employment—whether voluntarily or otherwise—plaintiff was suspended from his employment. As the court has already concluded, pre-suspension due process was required. And in the court's view, plaintiff's right to that process is not dependent on the court's determination of whether plaintiff was or was not constructively terminated. Under the facts presented, the "taking" occurred at the moment the suspension was imposed on June 29 and, as such, any pre-suspension due process violation occurred at that time.[8] *See Fuentes v. Shevin,* 407 U.S. 67, 83, 92 S.Ct. 1983, 1995–96, 32 L.Ed.2d 556 (1972) (no amount of post-deprivation process can undo pre-deprivation violation once it has occurred). Accordingly, the alleged subsequent resignation has no effect on that claim.

### 2. Constructive Discharge

In addition to the procedural due process claim relating to his suspension, plaintiff claims that he was constructively discharged due to the severity of the illegally-imposed suspension.[9] The gist of plaintiff's allegation is that his suspension was illegal since pursuant to a 1973 City handbook, which he apparently was issued, defendants lacked the authority to suspend him for more than ten days. He claims that this illegal suspension effectively forced him to retire so that he could obtain retirement benefits, since it would have been impossible for him to meet his expenses during the sixty-day period otherwise.

Generally, a constructive discharge "may be deemed to have resulted when the employer made conditions so intolerable that the employee reasonably felt compelled to resign."[10] *Shawgo v. Spradlin,* 701 F.2d 470, 481 (5th Cir.1983). In this case, the court could not conclude as a matter of law that Nichols was subjected to such intolerable conditions if the punishment he received was properly authorized by existing rules, since a sixty-day suspension, in and of itself, would not support a finding of constructive discharge.[11] However, if that suspension were illegally imposed, a factual question as to the existence of a constructive discharge might be presented. Consequently, the success of plaintiff's claim ultimately depends on the legality of the suspension imposed.[12]

8. The court has concluded that the deprivation occurred on June 29, 1992, the date the suspension was imposed, as opposed to July 1, 1992, the date the actual suspension period was to begin, since the deposition testimony of Chief Donovan and Assistant Chief Graham indicates that the decision to suspend plaintiff was final on June 29. It is clear that no hearing or other procedures comporting with due process were contemplated by the defendants between June 29 and July 1. In fact, the Civil Service Act, which defendants claimed to have followed, did not provide for any type of pre-suspension hearing; the only procedure provided therein was a post-suspension investigation if requested by the employee. *See* Miss.Code Ann. § 21–31–23.

9. Plaintiff claims that his constructive discharge claim has not been adequately challenged by defendants in their motion for summary judgment. However, defendants have attacked the basis of plaintiff's constructive discharge claim, i.e., their authority to impose a sixty-day suspension. The court therefore considers that plaintiff's constructive discharge claim is encompassed by defendants' motion.

10. In the Fifth Circuit, constructive discharge has taken two basic forms. The first type normally involves a general course of "on the job" harassment against the employee by the employer. The second form traditionally arises when an employer informs the employee that he must resign or be fired, the goal being the improper deprivation of the employee's due process rights. *Fowler v. Carrollton Public Library,* 799 F.2d 976 (5th Cir.1986). Plaintiff's claim, however, does not fit cleanly into either category and, thus, presents a fairly novel issue, i.e., whether a suspension which is not authorized by statute may constitute a constructive discharge.

11. Otherwise, any individual receiving an extended suspension could claim constructive discharge, even if the punishment were properly authorized under applicable rules. In the court's opinion, such a claim could not succeed.

12. Plaintiff has also claimed that defendants' decision to suspend him for sixty days was discriminatorily motivated due to his age, race and union ties. However, a determination of whether

And, it is on this ground that plaintiff's claim fails.

 Plaintiff's claim that the suspension was illegally imposed is based on the effect of his 1973 handbook, which is ultimately a question of state law. As Nichols points out, a manual issued by an employer to its employees, which sets forth provisions to be followed in "reprimanding, suspending, and discharging an employee," creates an obligation on the part of the employer to follow those provisions. *Bobbitt v. Orchard, Ltd.,* 603 So.2d 356 (Miss.1992). However, the fact that a manual was published does not mean, as a matter of law, that it will remain valid for eternity. To the contrary, an employer has a duty to follow the provisions of a manual only so long as a reasonable employee would believe it still to be current. Therefore, if a reasonable employee should be aware that a manual has been superseded or repealed, then that manual has no legally binding effect. After considering the evidence presented in this case, in the court's opinion, there are no facts which would support a finding that a reasonable employee would have concluded that the 1973 handbook was still in effect.

The 1973 manual entitled "Personnel Rules and Regulations" covered a variety of personnel policies and rules, one of which was the City's disciplinary procedures. In the text of the manual were various types of conduct for which discipline was authorized, including that for which plaintiff was disci-

plined. Although the standard table of penalties was not part of the text, a textual reference stated that they could be found in the appendix. And, as indicated by Nichols, under these tables, the maximum punishment an employee could receive for the misconduct charged against him was a ten-day suspension.[13]

The penalty table found in the 1973 manual was based on an order passed by the Jackson City Council in 1969, and this basis was clearly identified in the manual.[14] Significantly, however, the 1969 order establishing the standard table of penalties was *repealed* in 1983 by an order of the City Council.[15] Clearly, if Nichols had actual knowledge that the order was repealed, he would not be justified in relying on the manual, but he claims that he was not aware of the repeal.[16] However, regardless of plaintiff's actual knowledge of the repeal, other facts convince the court that the 1973 manual was superseded.

Specifically, in 1987 or some point soon thereafter, a second manual entitled "Civil Service Rules for City of Jackson, Mississippi" was issued to employees. This manual set forth provisions for the discipline of civil service employees, which under state statute included plaintiff, and according to both Chief Donovan and Assistant Chief Graham, these rules were applied in selecting plaintiff's punishment. Chief Donovan testified by deposition that these manuals were all around the fire stations. More significantly,

there is a constructive discharge does not involve an examination of an employer's state of mind. *Bourque v. Powell Elec. Mfg. Co.,* 617 F.2d 61, 65 (5th Cir.1980). Instead, it entails an evaluation of the conditions faced by the employee, i.e. the sixty days of suspension, and, in this case, the legality of that suspension.

13. The table revealed that the following punishments were authorized for first offense punishments:

1. Conduct unbecoming an employee—Reprimand or 1 to 10 day suspension.
2. Wantonly offensive conduct or language toward a fellow employee—Reprimand or 1 to 5 day suspension.

14. A notation on the table itself stated that it was "a true and exact copy of an order passed by the City Council ... on October 14, 1969, and re-

corded in Minute Book 'XX', pages 364–366." The table of contents reference to the appendix section also identified the table as being derived from this order.

15. The 1983 order stated that "the standard table of penalties established ... October 14, 1969, as recorded in · Minute Book 'XX', Pages 364 through 366, should be and is hereby repealed."

16. Additionally, the 1983 order· repealing the 1969 order was a public record, and if plaintiff was deemed to have constructive knowledge of this order, his reliance on the manual would also be unjustified, regardless of his actual knowledge. The court has been unable to find a Mississippi case on the issue of whether the public is deemed to have knowledge of City orders. But even if the order did not constitute public notice, the court's decision in this case would be the same.

though, Nichols testified in his deposition that he received this manual as well.[17]

■ Noticeably absent from this manual is any reference whatsoever to a standard table of penalties. In fact, the 1987 manual specifies no maximum or minimum penalties, but instead, appears to grant considerable discretion to the appropriate decisionmaker in setting the penalty. Rule XII, 2.1.1 of the manual provides, in particular, that the conduct of which plaintiff was accused was "grounds for removal, dismissal, suspension, demotion, or other disciplinary action." Although this manual appears to have superseded the 1973 manual, at least in regard to employee discipline, plaintiff nevertheless seems to maintain that since the 1983 manual did not expressly repeal the table contained in the 1973 handbook, it remained in effect. The court cannot accept this position. In the court's opinion, the absence of a table of penalties in the 1983 manual, coupled with the easily discernable grant of discretion in the 1983 handbook on matters of discipline, and the fact that the 1973 manual had expressly referred to and included a table of penalties which was not present in the 1983 book, should have clearly indicated to any reasonable employee that the table was no longer in force.[18] Inasmuch as the punishment imposed against plaintiff was permissible under the personnel policies then in effect, it follows that plaintiff's constructive discharge claim must fail.[19]

### 3. Discrimination on the Basis of Age, Race and Union Ties

■ Plaintiff has alleged that in suspending him for sixty days, defendants were intent on discriminating against him on the basis of his age, race and union affiliation.

However, these matters are not properly before the court. Although defendants did challenge the factual basis of these claims in their rebuttal brief, the court cannot properly consider matters presented for the first time in the rebuttal brief since plaintiff has had no chance to respond to these contentions.

### 4. Municipal Liability

■ Defendants argue that the City cannot be held liable under § 1983, since a municipality may be liable only if a municipal policy exists, and they maintain that no such policy has been shown. Defendants are correct in that municipal liability does not exist in the absence of an official policy or custom. This principle was set forth in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), in which the Supreme Court ruled that:

> a local government may not be sued under Section 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983.

*Id.* at 694, 98 S.Ct. at 2037. In the Fifth Circuit, to establish an official policy, there must be:

> a policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking offices or by an official to whom the lawmakers have delegated policymaking authority....

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984).[20] Applying these concepts,

---

17. Although the court is unaware of the exact distribution date of this manual, its cover reveals that it was revised as of April 9, 1987 and the evidence discloses that it was received by Nichols prior to the time his misconduct occurred.

18. At the very least, the absence of the standard table in the 1983 book should have led to an inquiry as to its continued validity, whereupon the public records of the City would quickly have revealed that this table had been repealed.

19. Plaintiff's complaint also states a procedural due process claim arising from his alleged constructive discharge. Specifically, he alleges that defendants' failure to supply pre-termination due process as required by the Civil Service Act was a violation of due process. However, this claim must also fail, since, as already noted, an employee who voluntarily resigns is entitled to no pre-termination process. *See Bury*, 540 F.2d at 836.

20. Under *Webster*, a municipal policy may also be established by custom. However, that aspect of the decision is not pertinent to this case.

the court concludes that the suspension decision was made by an official policymaker, the fire chief.

The court does not suggest that every decision made by a municipal officer potentially exposes the City to liability. To the contrary, "municipal liability only attaches where the decisionmaker possesses final authority to establish municipal policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). Accordingly, the determination of whether an individual possesses policymaking authority is a matter of state law. And, although plaintiff has failed to identify the state law which grants the fire chief policymaking authority, the court has determined that it exists.

The City of Jackson is covered by Mississippi's Civil Service Act, Miss.Code Ann. § 21–31–1 *et seq.*, and as such is governed by its provisions. *See* Miss.Code Ann. § 21–8–33 (classifying Jackson as a civil service city). The court is concerned only with the fire chief's policymaking authority to suspend plaintiff for sixty days, since each of plaintiff's claims is inextricably related to this decision. Under the Civil Service Act, the fire chief is allowed to "suspend a member pending the confirmation of the suspension by the regular appointing power, which shall be within three (3) days." Miss.Code Ann. § 21–31–23. Pursuant to the mayor-council system of government, under which the City operates, the "directors of departments shall appoint subordinate officers and employees within their respective department...." [21] Miss.Code Ann. § 21–8–23(4). In this instance, therefore, the fire chief was the appointing power and, consequently, was vested with full authority to suspend fire department employees as he saw fit. Accordingly, he was a city policymaker in that respect. Therefore, the court concludes that defendants' motion must be denied on these grounds.

### 5. Qualified Immunity

Defendants next assert that Chief Donovan and Assistant Chief Graham are entitled to qualified immunity. Qualified immunity shields government officials from civil damages liability if their conduct does not violate clearly established law of which a reasonable person should have been aware. *Harlow v. Fitzgerald*, 457 U.S. 800, 815–16, 102 S.Ct. 2727, 2736–37, 73 L.Ed.2d 396 (1982); *Raju v. Rhodes*, 7 F.3d 1210 (5th Cir.1993).[22] Plaintiff has alleged a colorable claim for discrimination on the basis of age, race and union affiliation. The factual basis of these claims has not been properly challenged by defendants, and since it is a violation of clearly established law for an employer to discriminate on any of these bases, the court concludes that, as to these claims, Donovan and Graham are not entitled to qualified immunity.

Plaintiff has also presented a viable pre-suspension due process claim. Donovan and Graham, though, maintain that they followed the applicable state statutory procedures in connection with the suspension of Nichols, and that they could not have reasonably believed that their actions were contrary to clearly established law. The applicable state statute, in fact, does not require pre-suspension due process hearings, but only establishes a right to post-suspension investigations upon request. *See* Miss.Code Ann. § 21–31–23. In this circuit, "a private party who attempts to secure rights under presumptively valid [state] statutes may establish that he is immune from monetary damages ... so long as he neither knew nor reasonably should have known that the statute was unconstitutional," since "to hold that a private party may be subject to constitutional tort damages for invoking in good faith presumptively valid legislation later held to be unconstitutional would be to visit the effects of unconstitutional action by the legislature on innocent defendants." *Folsom Investment Co. v. Moore*, 681 F.2d 1032, 1037 (5th Cir.

**21.** The Jackson Fire Department is a municipal department with the fire chief as its director.

**22.** There is some suggestion in this argument that the court should consider defendants' subjective intention. However, the court concludes that such an approach would be improper, since actual malice is not a factor in the qualified immunity analysis. *Harlow*, 457 U.S. at 815–16, 102 S.Ct. at 2736–37.

1982). To determine whether Donovan and Graham should have known that the state law was unconstitutional, the court must ascertain whether the constitutional right to a pre-suspension due process hearing was or was not clearly established at the time Nichols was suspended.

Although it is not necessarily required that there be a decision of the United States Supreme Court or even of a particular circuit for the law to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Noyola v. Texas Dept. of Human Resources*, 846 F.2d 1021, 1024 (5th Cir. 1988). "This is not to say that an official action is protected by qualified immunity unless that very action in question has previously been held unlawful, but it is to say that in light of pre-existing law, the unlawfulness must be apparent." *Id.* The Fifth Circuit explained that:

> As a general proposition, [we] will not rigidly define the applicable body of law in determining whether relevant legal rules were clearly established at the time of the conduct at issue. [citations omitted] Relying solely on Fifth Circuit and Supreme Court cases, for example, would be excessively formalistic, but they will loom largest in our inquiries. In determining what the relevant law is, then, a court must necessarily exercise some discretion in determining the relevance of a particular law under the facts and circumstances of each case, looking at factors such as the overall weight of authority, and the status of the courts that render substantially relevant decisions, as well as the jurisdiction of the courts that render substantially relevant decisions.

*Doe v. State of Louisiana*, 2 F.3d 1412, 1416 n. 8 (5th Cir.1993) (quoting *Melear v. Spears*, 862 F.2d 1177, 1184 n. 8 (5th Cir.1989)).

Applying this analysis, the court cannot conclude that the law regarding pre-suspension due process was "clearly established" at the time plaintiff was suspended. Neither the Supreme Court nor the Fifth Circuit had defined what process was due in that particular situation. Additionally, the court has uncovered no cases from other circuits issued prior to July 1992 addressing this issue,[23] and plaintiff failed to present any such authority.[24] Accordingly, the court concludes that Donovan and Graham are immune from suit as to any alleged violation of plaintiff's right to pre-suspension procedural due process.

### Conclusion

Based on the foregoing, it is ordered that defendants' motion is granted in part and denied in part as set forth herein.

SO ORDERED.

---

**23.** The court in *Bartlett v. Fisher*, 972 F.2d 911 (8th Cir.1992), concluded that a public employee is entitled to a pre-suspension due process hearing. This case, however, cannot properly be considered in determining defendants' right to qualified immunity, since the court may look only to law that existed at the time of the deprivation. And, as *Bartlett* was issued in August 1992, it is not pertinent to the court's immunity determination.

**24.** Once the defendant official has pled qualified immunity and established that he was performing discretionary functions, the "burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir.1992). Nichols has failed to satisfy this burden.