# IN THE COURT OF APPEALS
# OF THE
# STATE OF MISSISSIPPI
## NO. 2000-CC-01244-COA

**DWAYNE BOWIE**                                                                  **APPELLANT**

**v.**

**CITY OF JACKSON POLICE DEPARTMENT**                                              **APPELLEE**

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 06/14/2000 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDWARD P. LOBRANO JR. |
| ATTORNEY FOR APPELLEE: | CARRIE JOHNSON-MOSLEY |
| NATURE OF THE CASE: | CIVIL - OTHER |
| TRIAL COURT DISPOSITION: | COMMISSION'S DECISION THAT THE TERMINATION WAS FOR CAUSE AFFIRMED BY THE CIRCUIT COURT. |
| DISPOSITION: | AFFIRMED - 1/22/02 |
| MOTION FOR REHEARING FILED: | 3/29/2002; denied 5/21/2002 |
| CERTIORARI FILED: | |
| MANDATE ISSUED: | 6/11/2002 |

BEFORE KING, P.J., BRIDGES, AND IRVING, JJ.

BRIDGES, J., FOR THE COURT:

¶1. This case comes from the Circuit Court of Hinds County, Honorable Tomie T. Green presiding. Dwayne Bowie was dismissed from his employment at the Jackson Police Department on December 8, 1997. Bowie appealed his termination to the Civil Service Commission, and the Commission upheld Bowie's dismissal. Bowie then appealed his dismissal to the Hinds County Circuit Court, and the circuit court upheld the Commission's ruling. Bowie has appealed to this Court and brings several issues:

> **1. WHETHER BOWIE WAS DENIED PROCEDURAL DUE PROCESS WHEN HE WAS NOT GIVEN A MEANINGFUL OPPORTUNITY TO RESPOND ORALLY OR IN WRITING TO THE CHARGES PRIOR TO HIS SUSPENSION;**

> **2. WHETHER BOWIE WAS DENIED PROCEDURAL DUE PROCESS WHEN THE CITY OF JACKSON, POLICE DEPARTMENT FAILED TO PROVIDE ADEQUATE NOTICE AND AN EXPLANATION OF THE CHARGES AS IS CONSTITUTIONALLY REQUIRED;**

> **3. WHETHER THE JACKSON CIVIL SERVICE COMMISSION ORDER AFFIRMING**

**THE DISMISSAL OF BOWIE FOR THE CAUSE SET FORTH IN THE TERMINATION LETTER, WAS NOT SUPPORTED IN THE CIVIL SERVICE INVESTIGATION BY "SUBSTANTIAL EVIDENCE", THEREFORE THE ORDER WAS NOT RENDERED IN GOOD FAITH FOR CAUSE; AND**

**4. WHETHER BOWIE WAS DENIED HIS STATUTORY RIGHT TO HAVE THE CIVIL SERVICE COMMISSION APPLY THE "CONCLUSIVE" EVIDENCE STANDARD OF REVIEW IN ORDER TO AFFIRM THE DISCIPLINARY ACTION AGAINST HIM.**

Finding no error, we affirm.

## STATEMENT OF THE FACTS

¶2. On September 28, 1997, Dwayne Bowie was employed by the Jackson Police Department and was on patrol when he witnessed Eddie Young speeding and driving recklessly. Young refused to pull over. Bowie and Officer Fenton Stevens gave chase and were able to force Young over to the side of the road. During the chase, the officers observed Young drinking beer.

¶3. The officers approached the car from the rear and asked Young to exit the car. Young refused to get out of his car and yelled at the officers for pulling him over. The officers again asked Young to exit the car, and Bowie opened the driver's side door. Young became upset, and began moving his hands around the car. Bowie, noticing that Young seemed to be trying to get something out of his pocket, kicked Young's hand away from his side. Bowie claimed he felt a hard object in Young's pocket, which later was found to be a "Buck Knife". The officers then began to pull Young out of the vehicle, and a struggle ensued. During the struggle, Bowie again kicked Young in the side to keep Young's hand away from his pocket. Young continued to resist the police officers. After getting Young on the ground, Bowie came down on Young with his knee to stabilize Young. Eventually, the officers managed to handcuff Young.

¶4. Several other officers arrived on the scene at this time. The officers thought Young smelled of alcohol and, after performing a horizontal gaze test and a stigmas test, Officer Randall Hendon transported Young to precinct three for an intoxilyzer test. Hendon testified that during the drive to the station Young claimed he had been hurt by the police. Hendon also testified Young, while at the station, threw himself on the floor. Young refused the intoxilyzer test and was then taken to the UMC emergency room.

¶5. While at the hospital, Young's blood alcohol level was checked and he was given several other examinations. Young was observed for four hours, and was given an x-ray. Dr. James Joiner, the examining physician, determined Young had one cracked rib and no other injuries. Young was then taken back to the jail and was released on bail an hour and forty minutes later. The next day, Young went to the Veterans Administration Hospital emergency room. Young was found to have three cracked ribs, a collapsed lung, internal bleeding and a laceration on his spleen.

¶6. Young complained of Bowie's use of force during the arrest, and the Internal Affairs Division began an investigation. On October 17, 1997, Bowie was notified, by a letter from the Jackson Police Department, he was being suspended without pay. Bowie was informed that if the outcome of the Internal Affairs investigation was favorable, his compensation and benefits would be restored. Bowie did not complain about this. The outcome of the investigation turned out to be unfavorable, and on November 21, 1997, Bowie received a letter indicating an intent to terminate from Police Chief Bracy Colman. A pre-termination

hearing was held on December 1, 1997, and Bowie was officially terminated on December 8, 1997.

¶7. Bowie filed an appeal with the Civil Service Commission. After two evidentiary hearings, the Commission ruled Bowie's dismissal was for good cause and was not arbitrary and capricious. Bowie appealed this ruling to the Hinds County Circuit Court. The trial court affirmed the Commission's ruling, and Bowie now brings his appeal here.

## STATEMENT OF THE LAW

## STANDARD OF REVIEW

¶8. The standard of review this Court is to follow in appeals from a circuit court's ruling on a case coming from the Civil Service Commission is set out in section 21-31-23 of the Mississippi Code Annotated. It states:

> However, such hearing shall be confined to the determination of whether the judgment or order of removal, discharge, demotion, suspension or combination thereof made by the commission, was or was not made in good faith for cause, and no appeal to such court shall be taken except upon such ground or grounds.

Miss. Code Ann. § 21-31-23 (Rev. 2000). The Mississippi Supreme Court has held that "[i]ntertwined with this question (of good faith) is whether or not there was substantial evidence before the Civil Service Commission to support its order and whether it is arbitrary, unreasonable, confiscatory, and capricious." *City of Meridian v. Hill*, 447 So. 2d 641, 643 (Miss. 1984).

## ANALYSIS

### 1. WHETHER BOWIE WAS DENIED PROCEDURAL DUE PROCESS WHEN HE WAS NOT GIVEN A MEANINGFUL OPPORTUNITY TO RESPOND ORALLY OR IN WRITING TO THE CHARGES PRIOR TO HIS SUSPENSION.

¶9. In this issue, Bowie claims he was denied procedural due process because he was denied a property right, his salary, prior to his termination. Bowie was suspended without pay on October 17, 1997, and the only hearing he had was on December 1, 1997. Bowie claims this suspension without pay was an unconstitutional denial of due process because he was not afforded a hearing prior to his suspension. Bowie does not challenge here the due process given to him in the form of his pre-termination hearing. Bowie argues he should have been given some type of due process hearing prior to his suspension. The City of Jackson argues Bowie's case fits into one of the exceptions where minimal pre-termination procedures would be improper. The City also argues Bowie failed to request a hearing regarding his suspension, did not object orally or in writing to his suspension, and did not file a grievance.

¶10. When a procedural due process claim is raised in a case, it must be evaluated using a two step process. *Nichols v. City of Jackson*, 848 F. Supp. 718, 720 (S. D. Miss. 1994). "The first step requires the court to decide whether a protected life, liberty or property interest exists. The second step is a court determination of what process is required in the situation." *Id.* In looking at the first of these steps, the right of continued employment of a policeman is set out in Mississippi Code Annotated §§ 21-31-21 and 21-31-23. Miss. Code Ann. § § 21-31-21 & 21-31-23 (Rev. 2000). "These sections provide that any person in the classified civil service who has been permanently appointed or inducted into civil service shall not be

removed, suspended, demoted, or discharged, except for cause." *Little v. City of Jackson*, 375 So. 2d 1031, 1034 (Miss. 1979). Bowie was just such a civil servant, so Bowie did have a property interest, meeting the first step in procedural due process analysis.

¶11. The second step requires us to determine what process Bowie was owed in protecting his due process rights in this case. Before we begin, it should be noted this analysis does not deal with his pre-termination due process. Bowie has not raised that issue here. Instead Bowie has called into question whether he was afforded due process by the City's suspension of him without a hearing. Thus our analysis is limited to Bowie's suspension, and not his termination (which does meet due process muster).

¶12. The Southern District Court of Mississippi dealt with just such a case as this in the case of *Nichols*, 848 F. Supp. at 720. In that case, the defendants argued that the Mississippi statute only provides for post-suspension investigations, and since the statutes are what created the property interest, then the "statute does not create a sufficient property interest to justify any type of pre-suspension process." *Id.* at 722. The district court disagreed however, citing the case of *Cleveland Board of Education v. Loudermill*, 470 U. S. 532 (1985), in which the Supreme Court struck down just such an argument. *Nichols*, 848 F. Supp. at 720.

> The Court concluded that, even though the entitlement, i.e., property interest, arose from the state statute, this did not give the state the power to define the procedures used to protect that right. Instead, "minimum procedural requirements are a matter of federal law, and are not diminished by the fact that the state may have specified its own procedures . . . ."

*Id.* at 722 (quoting *Loudermill*, 470 U. S. at 539). The Court then held the defendants were required by federal law to grant Loudermill pre-suspension due process. Because of the above analysis, it is clear Bowie should have been afforded some sort of pre-suspension due process hearing.

¶13. However, the City of Jackson argues this case presents this Court with a case of extraordinary circumstance. Courts have recognized, in certain circumstances, that the grant of minimal due process procedures can be improper. *Little*, 375 So. 2d at 1035. "Extraordinary situations" of this type include such circumstances as "where retention would result in damage to municipal property, would be detrimental to the interest of city government or would result in injury to the employee, to a fellow employee or to the general public." *Id*. The City of Jackson argues the circumstances surrounding Eddie Young's arrest and prior complaints indicate Bowie's continued employment would result in injury to the public, private citizens, or might be detrimental to city government.

¶14. The circumstances surrounding this case fit into the category of extraordinary circumstances. The Commission's findings of fact state Bowie violated civil service rules preventing the use of unnecessary force and brutality to persons under arrest. The testimony in this case indicated Bowie kicked Young in the ribs, and Young later reported to the hospital where he was found to have broken ribs and a collapsed lung. This type of behavior is exactly the type which causes harm to private citizens and is detrimental to city government in that it lessens the trust of the public in those sworn to protect them. For this reason, we affirm.

**2. WHETHER BOWIE WAS DENIED PROCEDURAL DUE PROCESS WHEN THE CITY OF JACKSON, POLICE DEPARTMENT FAILED TO PROVIDE ADEQUATE NOTICE AND AN EXPLANATION OF THE CHARGES AS IS CONSTITUTIONALLY**

**REQUIRED.**

¶15. Bowie raises this issue to prove the notice provided him in the intent to terminate letter, given to him by the chief of police, did not adequately explain the charges against him. Bowie argues the letter did not provide him with the factual basis for the charges that were brought against him. The City of Jackson answers Bowie's claim by pointing out Bowie did receive a letter notifying him of the charges against him, giving an explanation of the employer's evidence, and providing an opportunity for Bowie to present his side of the story. The City further points out specific facts set out in the letter and also reminds this Court Bowie was represented by counsel at the pre-termination hearing.

¶16. The notice requirements which must be given to a civil servant prior to termination are set out in Mississippi Code Annotated section 21-31-23:

> In the absence of extraordinary circumstances or situations, before any such employee may be removed or discharged, he shall be given written notice of the intended termination, which shall state the reasons for termination and inform the employee that he has the right to respond in writing to the reasons given for the termination within a reasonable time and respond orally before the official charged with the responsibility of making the termination decision.

Miss. Code Ann. § 21-31-23 (Rev. 1990).

¶17. The pre-termination letter Bowie received contained a great deal of information. The letter states Bowie violated several of the General Orders of the Jackson Police Department during Young's arrest, and it sets out each of the rules which the City believes Bowie violated. The letter specifically states Bowie's termination resulted from the use of too much force during Young's arrest. The date and time of the pre-termination hearing at which Bowie could respond orally to the charges set against him were in the letter. The letter also states Bowie may respond to the charge in writing and that Bowie will be allowed to bring one person to the hearing to act as an observer.

¶18. Because of the above stated facts, we conclude Bowie was given proper notice regarding the pre-termination notice. The letter met all the requirements set out in the statute, and was very specific in laying out the grounds for Bowie's termination. Bowie argues that because the letter failed to mention the specific facts (i.e., kicking Young's hand) upon which the charges were based, then his notice was inadequate. However, the letter puts Bowie on notice he used too much force in Young's arrest. This provided Bowie with enough notice to find out specific facts upon which he could present an adequate defense. The explanation of the charges against Bowie was adequate, and therefore we affirm the trial court's decision as to this issue.

> **3. WHETHER THE JACKSON CIVIL SERVICE COMMISSION ORDER AFFIRMING THE DISMISSAL OF BOWIE FOR THE CAUSE SET FORTH IN THE TERMINATION LETTER, WAS NOT SUPPORTED IN THE CIVIL SERVICE INVESTIGATION BY "SUBSTANTIAL EVIDENCE", THEREFORE THE ORDER WAS NOT RENDERED IN GOOD FAITH FOR CAUSE.**

¶19. Bowie claims the evidence presented to the Civil Service Commission and the Hinds County Circuit Court was not substantial enough to support his termination in good faith. Bowie points out the Civil Service Commission did not make any findings in regards to this case, and that the Commission only issued an

order. The City of Jackson counters this argument by relying on the standard of review this Court and the circuit court is to use when reviewing cases appealed from the Civil Service Commission.

¶20. Before we begin our analysis, it should be noted this Court has a very limited standard of review in examining appeals from the Civil Service Commission. As stated above:

> On appeal here, the question is whether or not the action of the Civil Service Commission was in good faith for cause. Intertwined with this question is whether or not there was substantial evidence before the Civil Service Commission to support its order and whether it is arbitrary, unreasonable, confiscatory, and capricious.

*City of Meridian*, 447 So. 2d at 643. This Court is not to determine issues of fact regarding whether an employee was guilty of the charge or not, but should only determine whether the Commission acted in good faith based on the evidence before it. *Beasley v. City of Gulfport*, 724 So. 2d 883 (¶26) (Miss. 1998).

¶21. According to section 21-31-23 of the Mississippi Code Annotated, "[t]he findings of the commission shall be certified in writing to the appointing power, and shall be forthwith enforced by such officer." Miss. Code Ann. § 21-31-23 (Rev. 1990). The Commission originally failed to set out any findings in relation to Bowie's case. Rather, the Commission issued an order stating the City's firing of Bowie was in good faith. Such action is not enough. In addition to the statute requiring written findings, the Mississippi Supreme Court has held "that a Commission is under a duty to set forth with sufficient clarity and specificity the reason it is upholding the action taken by the city, as well as it is the duty of the city to set forth clearly the reasons for its disciplinary action." *City of Jackson v. Froshour*, 530 So. 2d 1348, 1355 (Miss. 1988).

¶22. Upon discovering the lack of a findings of fact, this Court issued an order directing the Commission to make a finding of fact in accordance with the statute. This order was followed, and a findings of fact was produced by the Commission in accordance with the statute. In its finding of fact, the Commission stated Bowie violated two civil service rules. The first rule the Commission claims Bowie violated was Civil Service Rule XII, § 2: 1.1 C which provides for disciplinary action when an officer violates a directive of a superior. The Commission stated Bowie's superiors were correct in disciplining Bowie because he violated Jackson Police Department General Order #600-10, which provides officers of the Jackson Police Department shall only use the force necessary to arrest a person. The Commission agreed that the amount of force Bowie used in this arrest was unnecessary. The second rule the Commission held Bowie to have violated was Civil Service Rule XII, § 2:1.10 which prohibits willful and wanton brutality or cruelty to a prisoner or one detained under arrest. The Commission went on to state the witnesses' testimony indicated Bowie kicked Young in the ribs causing Young to suffer severe injuries.

¶23. After considering the Commission's findings, we conclude that the actions taken by the Commission were for good cause. There is substantial evidence which supports the Commission's decision to terminate Bowie, and the basis provided in the Commission's findings of fact proves the decision was not arbitrary and capricious. The evidence proved Bowie kicked Young in the ribs during the arrest, and Young later suffered severe injuries because of Bowie's acts. Because it is not this Court's job to make a determination of fact, but only to decide whether the Commission acted in good faith based on the evidence which is offered, we conclude the Commission acted in good faith. *Beasley*, 724 So. 2d at (¶26). For these reasons, we affirm.

### 4. WHETHER BOWIE WAS DENIED HIS STATUTORY RIGHT TO HAVE THE CIVIL

**SERVICE COMMISSION APPLY THE "CONCLUSIVE" EVIDENCE STANDARD OF REVIEW IN ORDER TO AFFIRM THE DISCIPLINARY ACTION AGAINST HIM.**

¶24. Bowie argues the evidence offered against him could not be considered "conclusive" as to his guilt. Bowie points out the lower court was to apply the conclusive evidence standard, and therefore the lower court was in error for finding insufficient evidence conclusive. The City of Jackson counters by arguing the Commission is the ultimate fact finder in cases such as this. The City of Jackson further argues that when evidence is in conflict, it is the fact finders position to determine what the conclusive facts are in a case. Since the Commission was the fact finder, then the Commission determines what evidence is conclusive. This argument leads to the conclusion that since this is what the Commission did here, there is no error.

¶25. The proper standard of review in cases such as this is the one stated above; this Court is to determine whether the termination was in good faith and for cause, and whether the Commission's decision is supported by substantial evidence such that it was not arbitrary and capricious. *Hill*, 447 So. 2d at 643. The conclusive evidence standard enunciated by Bowie in this case comes from a part of section 21-31-23 of the Mississippi Code Annotated which states:

> The investigation shall be confined to the determination of the question of whether such disciplinary action was or was not made for political or religious reasons and was or was not made in good faith for cause. After such investigation the commission may, if in its estimation the evidence is *conclusive*, affirm the disciplinary actions, or if it shall find that the disciplinary action was made for political or religious reasons, or was not made in good faith for cause, shall order the immediate reinstatement or reemployment of such person in the office, place, position, or employment from which such person was removed . . . .

Miss. Code Ann. § 21-31-23 (Rev. 1990). Thus, the Commission is to decide if the evidence is conclusive that the termination was for good cause. *Id*. The conclusive language comes into the statute to show the degree to which the Commission must be convinced the termination was for good cause, not to act as a separate standard of review.

¶26. By citing this language, Bowie argues the evidence was not conclusive, and because the evidence was not conclusive, the lower court was in error for affirming the Commission. The statute states "[a]fter such investigation the commission may, if in its estimation the evidence is *conclusive*, affirm the disciplinary actions. . . ." Miss. Code Ann. § 21-31-23 (Rev. 1990). This language stresses that if the Commission, acting as a finder of fact, finds the evidence conclusive, then it can affirm the City. That is exactly what the Commission did in this case; it found the facts conclusive and affirmed the termination. It is not the position of this Court to act as a fact finder. *Beasley*, 724 So. 2d at (¶26). It is the job of the Commission to determine which facts to believe and which not to believe. *Id*. In this case, the Commission believed the facts conclusively proved Bowie's termination was for good cause. The Commission followed the statute, and we determine Bowie's termination was for good cause and supported by substantial evidence. Therefore, we affirm.

## CONCLUSION

¶27. This Court finds Bowie was not denied his procedural due process rights in regard to his suspension. Bowie was given the proper notice of the charges against him. The Commission's finding that Bowie's termination was for good cause was made in good faith and is supported by substantial evidence, and the

Commission used the correct standard of review in deciding to affirm Bowie's termination. For these reasons, we affirm.

¶28. **THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS HEREBY AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**KING, P.J., THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. SOUTHWICK, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J. AND LEE, J.**

SOUTHWICK, P.J., CONCURRING:

¶29. The majority finds that this police officer was due more process than he received before being suspended without pay. An exception is then applied that would permit less process because of the potential detriment to the City and public safety by Bowie's continued employment during the pendency of the investigation. Thus the majority upholds the City's action but only after finding a due process violation. I disagree, most respectfully, with the analysis. I do agree with the result.

¶30. Bowie has alleged a denial of a property interest in his employment.

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.... Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.

*Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972).

¶31. There is not a *per se* property interest in public employment. However, if the employee cannot be dismissed except for cause, that creates a sufficient entitlement to require pre-termination process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39,105 S.Ct. 1487, 1491 (1985). Here, the record indicates that officer Bowie was a veteran police officer. It was shown that Bowie had statutory civil service protection such that he could only be terminated for cause. Thus the threshold for a property interest has been crossed.

¶32. What *Loudermill* specifically holds is that before cause-based *termination*, there are certain requirements of process under the Constitution. *Loudermill*, 470 U.S. at 542, 105 S. Ct. at 1493. That is also the point of the pre-*Loudermill* Mississippi decision relied upon by Bowie, which is *Little v. City of Jackson*, 375 So. 2d 1031, 1035 (Miss. 1979).

¶33. However, Bowie makes no argument that he was provided inadequate process before he was terminated. Instead, it is the suspension without pay that he argues provided less than the process that was due. With respect for the majority, *Loudermill* does not define the extent of process due for a suspension. This is what *Loudermill* held:

> The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this *prior to termination* would intrude to an unwarranted extent on the government's

interest in quickly removing an unsatisfactory employee.

*Loudermill*, 472 U.S. at 546, 105 S. Ct. at 1495 (emphasis added).

¶34. In order to analyze what is necessary before a person can be suspended, I turn to the more recent unanimous United States Supreme Court decision in *Gilbert v. Homar*, 520 U.S. 924, 117 S. Ct. 1807 (1997). The Court defined the issue in *Homar* as "whether a State violates the Due Process Clause of the Fourteenth Amendment by failing to provide notice and a hearing before suspending a tenured public employee without pay." *Id.* at 926, 117 S. Ct. at 1811. Homar was a state university police officer suspended without pay because he had been charged with a felony.

> Unlike the employee in *Loudermill,* who faced termination, respondent faced only a temporary suspension without pay. So long as the suspended employee receives a sufficiently prompt postsuspension hearing, the lost income is relatively insubstantial (compared with termination), and fringe benefits such as health and life insurance are often not affected at all . . .

*Id.* at 932, 117 S. Ct. at 1813.

¶35. The appropriate analysis is not whether a property interest is being affected, and if it is, then the process that was identified in *Loudermill* is to be provided. Instead, even though due process rights exist, the issue is situation-specific as to what process is due. That depends on a balance of three factors:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest." *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

*Gilbert v. Homar,* 520 U.S. at 931-32, 117 S.Ct. at 1812. Though the Court agreed with officer Homar that he had a significant interest in the "uninterrupted receipt of his paycheck," the Court held that the length and finality of the deprivation of a property interest were central considerations for identifying the needed procedural protections. *Id.*

¶36. The Court found that the private interest involved in a relatively short suspension prior to a final hearing was not as weighty as the government's "significant interest in immediately suspending, when felony charges are filed against them, employees who occupy positions of great public trust and high public visibility, such as police officers." *Id.* at 932, 117 S.Ct. at 1813. The Court found no benefit to a pre-suspension hearing in *Gilbert*, since the existence of felony charges was sufficient to justify the suspension regardless of whether the charges were later proved to be valid or even reasonable. That was true, among other reasons, because of the public's concern about police officers' being on duty despite being charged with felonies. *Id.* The Court remanded, though, to have a determination made of whether delay in conducting the post-suspension hearing may have been a separate basis for finding a violation of due process. *Id.* at 935-36, 117 S.Ct. at 1814-1815.

¶37. Applying that analysis here, I find that the State has a significantly weighty interest in not having an officer on duty who has been charged with using excessive physical force that caused serious injuries to a suspect. The suspect was said to have a collapsed lung, several broken ribs, and a ruptured spleen. The time during which the suspension lasted was relatively brief; indeed, Bowie does not question the validity of the post-suspension process. It is true that Bowie's acceptance of what happened post-suspension in part

turns on his argument that he deserved more pre-suspension, but I find no undue delay prior to the hearing that terminated him. A state employee "has an interest in seeing that a decision concerning his or her continued suspension [or termination] is not made with excessive haste." *Id.* at 935, 117 S.Ct. at 1814 (brackets added), quoting *F.D.I.C. v. Mallen*, 486 U.S. 230, 243, 108 S.Ct. 1780, 1789 (1988). Here, the suspension occurred on October 17, 1997; the investigation continued and his termination hearing was held on December 1.

¶38. The only serious question for us under the three standards of *Mathews v. Eldridge* is whether additional procedures prior to the suspension were useful to substantiate the charge. This factor measures "the risk of erroneous deprivation and the likely value of any additional procedures." *Gilbert,* 520 U.S. at 933, 117 S.Ct. at 1813. The *Gilbert* Court was concerned with whether there were sufficient assurances that a suspension decision was based on reasonable grounds. Though a grand jury indictment would certainly have been sufficient, the Court found that "for present purposes arrest and charge give reason enough. They serve to assure that the state employer's decision to suspend the employee is not 'baseless or unwarranted.'" *Id.* at 934, 117 S.Ct. at 1814, quoting *Mallen*, 486 U.S. at 240, 108 S.Ct. at 1788. Are there sufficient pre-suspension assurances here that there was merit to the allegations against Bowie?

¶39. What the City did prior to suspension was this. Once the arrested suspect complained about excessive force, a claim made the day after arrest when he went to the Veteran's Administration Hospital complaining of difficulty breathing and pain in his side, the police department's Internal Affairs Division conducted an investigation. The investigators concluded that excessive force had been used and that Bowie had violated department regulations. This investigation was more formal and deliberate than the mere arrest and charge in *Gilbert*. I find this adequate to satisfy the Supreme Court's emphasis that the City's decision not be "baseless or unwarranted."

¶40. The process that Bowie was due under the United States Constitution was provided. I agree that the City of Jackson regulations that permit an employee's immediate termination when extraordinary situations arise could be applied to the suspension. That is an independent matter of whether Bowie received the process that the City agreed to give him as opposed to what the Constitution required.

**MCMILLIN, C.J., AND LEE, J., JOIN THIS SEPARATE WRITTEN OPINION.**